CLARK J. MOUSHON *et al.*, Plaintiffs-Appellants, v. LYLE B. MOUSHON *et al.*, Defendants-Appellees—MOUSHON CONSTRUCTION COMPANY, INC., Plaintiff-Appellee, v. CLARK J. MOUSHON *et al.*, Defendants-Appellants (The Herget National Bank of Pekin, as Trustee, Defendant).

Third District   No. 3—85—0534

Opinion filed September 3, 1986.

Dean B. Rhoads, of Sutkowski & Washkuhn Associates, of Peoria, for appellants.

Karen L. Kendall and Lyle W. Allen, both of Heyl, Royster, Voelker & Allen, of Peoria (Carl Reardon, of counsel), for appellees Lyle B. Moushon and Herbert R. Moushon.

Carl F. Reardon, of Reardon & Orr, Ltd., of East Peoria, for appellee Moushon Construction Company.

Wayne R. Moushon, of Brimfield, for appellee, *pro se.*

JUSTICE BARRY delivered the opinion of the court:

This appeal is the culmination of a family dispute involving nine brothers and sisters who share equally in the beneficial interest of a land trust established by their mother. The plaintiffs (five of the beneficiaries) are appealing from a judgment in favor of the defendants (the three manager/beneficiaries) in an equitable action wherein plaintiffs sought an accounting, damages, and the removal of defendants as fiduciaries of the trust. Plaintiffs also appeal from a judgment of foreclosure entered in a foreclosure action brought by Moushon Construction Company, Inc., against the Herget National Bank as trustee of the trust. The foreclosure suit was consolidated with plaintiffs' cause in the trial court. Defendants have cross-appealed from orders which disallowed claims for attorney fees and a trustee's fee.

Lester Moushon was a farmer who during his lifetime acquired more than 600 acres of real estate. Lester died in 1970, and his wife Mary became the sole owner of the land. Before Lester's death, Herbert Moushon (one of the couple's nine children) farmed the land under a lease arrangement with his parents, and Lyle Moushon (another son) extracted gravel from some of the land under an agreement whereby he paid 10 cents per ton royalty to his parents for all gravel sold. Both operations continued after the father died. In 1974, Mary Moushon placed title to all of the property except her residence in a land trust with Herget National Bank of Pekin as trustee and with Mary as the sole beneficiary.

On May 17, 1976, Mary sent a handwritten letter to her children stating her desire to name three of her sons as managers of the trust, as follows:

"On this 17th day of May 1976 I have decided to appoint three of my sons Lyle B., Herbert R., and Wayne R. to act as trustees of my land trust held by Herget National Bank of Pekin Illinois Trust No. TA 2717.

In 1972 I made some commitments to the City of East Peoria, Ill. to build a road thru part of my property which I could benefit in future development. This project has taken a while longer than I thot [sic]. I have reached an age I no longer want to be obligated with this type of duties. Therefor I have appointed the above three of my children to act on my behalf as trustees so I can spend more of my time in church activities, community work and travel.

The trustees can develop, lease, farm, sell, etc., to the best of their ability. All of my children will be given an equal share of my property held in the above mentioned trust and will be notified of such gifts. The trustees will place all profits from property in the Herget National bank or its successor to be divided equal among my children if living or their heirs. The trustees shall act for a period of ten years.

The trustees may mortage [sic] or sell property to pay my taxes, to pay development cost, farm cost, or any other cost that may arise in carrying out these wishes."

Further details of the gift from Mary to her children were spelled out in a letter from attorney Ronald L. Keyser to the children of Mary M. Moushon. The letter was dated May 28, 1976, and stated, in part:

"Your mother had entered into an agreement with the City of East Peoria involving certain expenditures to be made by her

in connection with the improvement of Illini Drive. In pursuance of this agreement, Lyle Moushon advanced the funds necessary for the grading and the sewer, water and electrical therefor. This amounted to a total sum of $187,616.00, and prior to making the assignment of the beneficial interests in the land trust, your mother directed the Trustee to execute a note and mortgage payable five years from date thereof in said amount, with interest due thereon in the amount of 9% per annum, payable annually after date.

This mortgage has been signed solely by the land trustee and creates no personal liability on your mother, nor does it create any personal liability insofar as any of the beneficial owners of the land trust are concerned, as only the real estate in the land trust is liable for the indebtedness. It is contemplated that a portion of the premises along Illini Drive will be developed for subdivision purposes, and that from the sale of the lots, there will be first paid the sums of money necessary to reduce the unpaid balance of said mortgage as well as the development costs for said subdivision."

As attorney Keyser's letter states, the 1976 mortgage was a result of an agreement which Mary entered into in 1972 with the city of East Peoria and certain other land owners to provide for the construction of Illini Drive. Under the terms of the agreement, Mary Moushon would perform the excavation of 110,000 cubic yards of earth at a cost of $1.50 per yard in lieu of a special assessment against her property in the amount of $165,000. Lyle and Herbert Moushon performed the excavation work, and Mary Moushon's special assessment was marked "paid." Lyle and Herbert also installed a sewer and water line under the road at a cost of $22,616. These two items ($165,000 and $22,616) comprised the amount of the note and mortgage which Mary executed before she appointed Lyle, Herbert, and Wayne as managers of the trust. At the time of trial in July of 1983, the total principal and interest owed by the trust to Moushon, Inc., was $240,512.

On August 5, 1976, Lyle, Herbert and Wayne wrote to some of the beneficiaries to advise them that a gift tax would soon be due, that they proposed to either sell or mortgage a portion of the real estate in order to pay the gift tax, that they also proposed to execute a farm lease with Herbert and to proceed with the work necessary to complete the subdivision previously begun by Mary, and that they would direct the trustee to sell the lots and apply the proceeds to the payment of the mortgage note which Mary executed prior to the gift,

to any other mortgages, to legal and accounting fees in connection with the gift taxes and subdivision work, and finally, any proceeds remaining would be distributed among the beneficiaries. The letter noted that the intended beneficiaries might choose to pay their share of the gift tax from personal funds or might refuse the gift altogether. The letter concluded, "If we do not hear from you by noon on August 14, 1976, we will pay the gift tax on your behalf." The record does not disclose any refusals by the beneficiaries.

Herbert, Lyle and Wayne Moushon proceeded with the development of a 21-lot, single-family subdivision. The development work was performed by Moushon, Inc., a corporation whose shareholders were Lyle (30%), his wife (30%), and their four children (10% each). The corporation installed water mains and sewers, did grading and filling, and provided gravel for streets. This work was done on a "time and material" basis at a cost of $83,300. Moushon, Inc., has sought a 20% profit (10% for overhead and 10% "true profit") in the amount of $16,700. Sixteen of the subdivision lots have been sold for a total of $248,485. Five lots remain to be sold, and the trust owns a parcel of "prime commercial real estate" at the corner of Illini Drive and Route 8 as well as another 69 acres available for sale or construction.

Plaintiffs filed their complaint for an accounting and other relief on September 30, 1980, in Peoria County. Numerous motions and extensive discovery followed. The complaint for a mortgage foreclosure was filed by Moushon, Inc., against the trustee on June 11, 1982, in Tazewell County and a year later was consolidated with the Peoria County action. A bench trial was had in July and August of 1983. The court entered judgment orders on March 4, 1985, after which this appeal was perfected.

### FIDUCIARIES' PROFITS

Plaintiffs contend that the trial court erred when it ruled that no illegal or unreasonable profits were gained by any of the defendants. Plaintiffs do not claim that the profits received or sought by defendants were unreasonable in amount but rather that at all times relevant, Lyle, Herbert, and Wayne owed a fiduciary duty either to Mary Moushon or to the plaintiff beneficiaries of the trust, and that a fiduciary may not appropriate to his individual use any profits from the use of the beneficiaries' funds. They rely upon *In re Swiecicki* (1985), 106 Ill. 2d 111, 477 N.E.2d 488, where the supreme court held that a bank, acting as the guardian of an estate of a minor, must account to the estate for any profit which it makes by investing the estate funds in its own savings account and certificates of deposit. That

ruling was expressly held to apply prospectively only to that case and to all investments made or renewed after June 1, 1985. Hence, the *Swiecicki* ruling is not applicable to the case before us.

■ Furthermore, this was a land trust, and Illinois law specifically permits the trustees of a land trust to become a creditor of the trust without breaching its fiduciary duty. (Ill. Rev. Stat. 1983, ch. 148, par. 83.) Section 4 of "An Act in relation to land trusts ***" (Ill. Rev. Stat. 1983, ch. 148, par. 84) provides for its retroactive application, and this provision has been held constitutional by the Illinois Supreme Court. (*Sanelli v. Glenview State Bank* (1985), 108 Ill. 2d 1, 483 N.E.2d 226.) Although defendants are managers of the trust and not actually trustees, they do serve in a fiduciary relationship to the beneficiaries. They should not, however, be held to a more stringent standard than the trustee.

■ In their bill of particulars, plaintiffs enumerate those instances where defendants allegedly breached their duties to the beneficiaries. These included the removal of gravel from the land beginning in 1969, accrued interest on the note signed by Mary Moushon, and payments for work on the subdivision in 1976 through 1978 which included "profit." The trial court ruled that plaintiffs have no standing to complain about any agreement entered into by Mary Moushon prior to the time plaintiffs became beneficiaries of the trust. The logic of the court's ruling is compelling. Plaintiffs should not be allowed to complain about the business arrangements which Mary made with Lyle and Herbert at the time when plaintiffs had no interest in the property. The removal of gravel by Lyle was pursuant to a 1969 agreement. Also, the farming arrangement with Herbert was a longstanding one. Similarly, the note and mortgage in favor of Moushon, Inc., were executed by Mary before plaintiffs became beneficiaries and were given in consideration for work already performed. Although the details of the subdivision development work had not been reduced to a formal agreement at the time Mary made the gifts to her children, it seems clear that the beneficiaries were informed of the development plan and also were given an opportunity to refuse to participate by the managers. The work performed for the trust by Lyle through Moushon, Inc., was a continuation of the work he had undertaken for Mary in furtherance of the development of the subdivision. Plaintiffs accepted the gifts of their beneficial interests subject to the preexisting agreements and understandings and cannot now complain.

■ As noted above, plaintiffs do not complain that the profit realized by defendants in the form of interest, gravel removal, and devel-

opment work was unreasonable for the work performed but only that no profit in any amount should be permitted to these fiduciaries. We cannot agree. We hold that the trial court did apply the correct legal standard in ruling that defendants did not receive any illegal profit.

Plaintiffs also argue that the orders of the circuit court were against the manifest weight of the evidence if viewed against the legal standard urged by plaintiffs rather than the one used by the circuit court. Since we have held that the court used the correct legal standard, plaintiffs cannot prevail on the basis of the manifest weight of the evidence issue either. Our decision on the first point disposes of both arguments.

## FORECLOSURE COMPLAINT

█ The complaint for foreclosure filed in Tazewell County circuit court was signed for Moushon Construction Company, Inc., by Lyle B. Moushon, president. Plaintiffs (who were defendants in the foreclosure action) contend that the judgment of foreclosure is void since the complaint was filed by a lay agent of the corporation and not by a licensed attorney. Plaintiffs cite *Housing Authority v. Tonsul* (1983), 115 Ill. App. 3d 739, 450 N.E.2d 1248, where a forcible-entry-and-detainer complaint was prepared, signed, and filed by a nonattorney agent of the housing authority. The court held that a cause prosecuted by a lay agent acting on behalf of a corporation is a nullity since it violates the rule against a corporation appearing "in any proceeding in any court through an agent who is not a licensed attorney." 115 Ill. App. 3d 739, 741, 450 N.E.2d 1248.

The case at bar does not present the same factual situation as the *Housing Authority* case. Here the complaint recites that Moushon Construction Company, Inc., comes by its attorney, and the trial court record discloses that the corporation was represented by a licensed attorney at every stage of the proceeding. The signature of the president of the corporation on the complaint was not improper.

## EX PARTE COMMUNICATIONS

█ Plaintiffs next contend that the judgment order should be set aside because defendants' counsel had improper *ex parte* communications with the trial judge after the trial was concluded but before the judgment was entered. This issue was raised in the trial court by a motion to vacate the judgment orders. The motion was denied. Plaintiffs assert that the trial judge called the attorney for Moushon Construction Company, Inc., in early February of 1985, informed him that he had decided to rule in favor of defendants, and

directed him to prepare the necessary orders. The judge dictated the findings that should be included in the orders. The attorney prepared a draft of the appropriate orders and discussed them with Lyle Moushon, after which he prepared a second and then a third draft. The attorney delivered the orders to the judge in person, and at that time he pointed out to the judge that he had added a provision about the order not being final and appealable until claims for attorney fees were heard and decided. The judgment order also awarded Lyle certain sums which were not included in the attorney's notes of his call from the judge—$10,200 from the trust and $2,200 for travel and telephone expenses. Plaintiffs insist that the variations between the attorney's notes and the final order indicate professional impropriety in the preparation of the order, and that such attempts to influence the judgment of the trial judge should invalidate the judgment.

Defendants' counsel insists that he merely followed the directions of the trial judge in compliance with General Order No. 11 then in effect in the Tenth Judicial Circuit. That order provided that the attorney for the prevailing party should prepare and present to the court a written draft of the order unless directed otherwise by the court. Here the court did not direct that notice be given to the losing parties. The court entered the orders as submitted.

Frankly, we believe the procedure followed by the trial judge in this case was ill-advised. It would have been much better to have notified all parties of the court's decision, and to have had the draft orders reviewed by the parties before entry. However, we also believe that this was a matter totally within the discretion of the judge. If the orders as prepared did not accurately reflect the decision of the trial judge, he had ample opportunity to ask for changes to be made either before he signed them or again when considering the motion to vacate. We are not aware of any direct evidence of improper communications between the judge and the defendant's attorney. Accordingly, we conclude that the trial court did not abuse its discretion in denying plaintiffs' post-trial motion to vacate.

## CROSS-APPEAL: DENIAL OF FEES

Defendants Lyle and Herbert Moushon have filed a cross-appeal from two rulings of the trial court: (1) refusal to award $20,681 as a trustee's fee for 827 hours expended for the trust and (2) denial of defendants' motion for attorney fees and costs.

TRUSTEE'S FEE

■ Defendants argue that, under the Trusts and Trustees Act (Ill. Rev. Stat. 1985, ch. 17, par. 1677), a trustee is entitled to reasonable compensation for services rendered, and that $25 per hour would be reasonable compensation in this case. Lyle testified to his records of the time spent disputing gift tax liability with the Internal Revenue Service, working with a city engineer and others to develop the subdivision, and performing other services for the trust. It is not clear from Lyle's testimony how much of this work was done as manager of the trust and how much as developer of the subdivision. Moushon Construction Company, Inc., of which Lyle is president, has charged the trust for developing the subdivision, and compensation for Lyle's efforts in that regard was presumably included in the charges of the corporation approved by the court. Although it seems likely that Lyle did devote a portion of his time to handling trust business apart from the subdivision development, we cannot say that the decision of the trial court is contrary to the manifest weight of the evidence. Lyle was not entitled to be compensated twice for the same work, and we cannot say that the trial court abused its discretion in finding, in effect, that he did not meet his burden of establishing an accurate accounting of his personal time expended solely in behalf of the trust.

ATTORNEY FEES

■ Defendants also claim that the trial court erred in denying their motion for attorney fees and costs under section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—611), which provides that untrue allegations, made without reasonable cause, shall subject the party pleading them to the payment of reasonable expenses and reasonable attorney fees actually incurred by the other party. Defendant sought to recover costs and fees as a result of defending the motion to vacate the judgment which plaintiffs filed. Defendants argue that plaintiffs' counsel knew or should have known that the local rules for the Tenth Judicial Circuit provided for preparation of the judgment order by the attorney for the prevailing side and did not require prior notice to the losing party, and hence, that the communications between the judge and defendants' counsel were not improper *ex parte* communications.

Section 2—611 was intended to prohibit spurious litigation, and attorneys are presumed "to have due regard for their responsibility as officers of the court, and, accordingly, they are allowed to exercise broad discretion based upon an honest judgment from the facts presented to them." (*Peoples Gas Light & Coke Co. v. Black Steer Provi-*

*sion Co.* (1985), 131 Ill. App. 3d 387, 391, 475 N.E.2d 1012.) Obviously, counsel's conduct must be judged on the basis of what was known at the time the motion to vacate was filed, not on the evidence adduced at the hearing. Given the fact that plaintiffs' counsel was given no notice of the court's decision until after the judgment order was prepared and entered, we do not find that the trial court abused its discretion in denying the motion for fees and costs.

For the reasons indicated, we hold that the judgment orders of the circuit court of Peoria County should be affirmed in this cause.

Affirmed.

SCOTT, P.J., and HEIPLE, J., concur.