# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

**Downtown Disposal Services, Inc. v. City of Chicago, 2012 IL 112040**

---

| | |
|---|---|
| Caption in Supreme Court: | DOWNTOWN DISPOSAL SERVICES, INC., Appellee, v. THE CITY OF CHICAGO *et al.*, Appellants. |
| Docket No. | 112040 |
| Filed | November 1, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The "nullity rule" calling for dismissal of a complaint filed on behalf of a corporation by a nonattorney should not be applied automatically, but on the basis of a consideration of all the facts and circumstances—dismissal of complaint for administrative review properly reversed and cause remanded for an opportunity to retain counsel and amend the complaint if the facts so warrant. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. James M. McGing, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. |

| Counsel on Appeal | Mara S. Georges and Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper and Christopher S. Norborg, of counsel), for appellants. |
| | |
| | Richard D. Boonstra and John C. Lillig, of Hoogendoorn & Talbot LLP, and Patrick E. Dwyer III, all of Chicago, for appellee. |
| | |
| | John G. Locallo, Charles J. Northrup and Melinda J. Bentley, of Springfield, for *amicus curiae* Illinois State Bar Association. |
| | |
| Justices | JUSTICE BURKE delivered the judgment of the court, with opinion. |
| | Justices Freeman, Garman, and Theis concurred in the judgment and opinion. |
| | Justice Karmeier dissented, with opinion, joined by Chief Justice Kilbride and Justice Thomas. |

**OPINION**

¶ 1 In this case, we must determine whether a complaint for administrative review filed by a corporation's president, on behalf of the corporation, is a nullity because the president is not an attorney. For the reasons that follow, we conclude that the complaints are not void.

¶ 2 BACKGROUND

¶ 3 Between December 2007 and March 2008, the City of Chicago's department of transportation issued plaintiff, Downtown Disposal Services, Inc., four notices for violating City ordinances pertaining to several of its dumpsters. The notices required Downtown Disposal to appear at administrative hearings on various dates between February and April 2008. When Downtown Disposal failed to appear at any of the hearings, the department of administrative hearings entered default judgments against Downtown Disposal requiring it to pay costs and penalties.

¶ 4 On August 18, 2008, Peter Van Tholen, president of Downtown Disposal, filed four motions to set aside the default judgments, alleging the company did not receive notice of the hearings. On September 19, 2008, at a consolidated hearing, Van Tholen advised the administrative law officer that for the previous five years, Downtown Disposal had made several attempts to change its address on file with the City, but the City had not made the change in its records. Because of the City's failure, Downtown Disposal did not receive the violation notices. Following Van Tholen's testimony, the administrative law officer denied Downtown Disposal's motions, finding that the City sent the notices to the address on file

for Downtown Disposal and that Downtown Disposal failed to provide any evidence it had changed its address before the violations were mailed. Thereafter, the following colloquy occurred:

> "Administrative Law Officer Harris: However, you do have a right to appeal the decision—
>
> Mr. Van Tholen: I will.
>
> Administrative Law Officer Harris: —to the Circuit Court.
>
> That's fine, sir. You have a right to appeal the decision to the Circuit Court within 35 days of today's date, and you would do that in Room 602 of the Daley Center."

¶ 5    On October 16, 2008, Van Tholen filled out four blank *pro se* complaints for administrative review. On the preprinted form supplied by the clerk's office, Van Tholen filled in plaintiff's name, its address, the date of the administrative decision, and the docket number. Van Tholen signed the forms. Service was then made upon the City by certified mail. On April 19, 2009, attorney Richard D. Boonstra filed appearances on behalf of plaintiff in each of the cases.

¶ 6    On July 29, 2009, the City moved to dismiss the complaints pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2008)), arguing that because a nonattorney, Van Tholen, filed the complaints on behalf of Downtown Disposal, a corporation, they were null and void. On September 23, Boonstra filed motions for leave to file amended complaints, arguing that the lack of an attorney's signature was a technical defect which could be cured by filing an amended complaint signed by an attorney. In addition, in January of 2010, Downtown Disposal filed a motion for summary judgment, arguing that because the City was a municipal corporation, the violations had to be signed by an attorney and, since they were not, the underlying actions filed by the City were null and void *ab initio*.

¶ 7    Following a hearing on January 29, 2010, the circuit court of Cook County granted the City's motions to dismiss, finding it was compelled to follow authority from the First District of the appellate court holding that actions filed by nonattorneys on behalf of a corporation are null and void. Based on this ruling, the court declared Downtown Disposal's motions for leave to amend the complaints and motion for summary judgment moot.

¶ 8    In ruling on the question before it, the trial court found "this is a troubling issue" because, in administrative review cases, the trial courts are "confronted with nonattorneys filing pleadings" on a daily basis. After pointing out that the appellate court had held that filling in a form was the unauthorized practice of law, the trial court stated as follows:

> "If you review the Complaint that's filed in the Administrative Review cases, it is just that. It is a prepared form. It is handed to anyone who walks into the Clerk's office. They merely have to fill in names and fill in the date that the Findings and Decision was entered against them, and it has form language as to why they are appealing the matter and it initiates this process."

After again stating it was compelled to follow the decisions of the appellate court, the trial

judge identified certain issues he believed should be revisited. Specifically:

> "The actual issue in this case as to the filing of this form, is it the unauthorized practice of law?
>
> And then there is [*sic*] other considerations, such as here where the refiling of an action is not available to the party that it would be time barred by dismissal of the pending action, is that too severe a sanction to impose?
>
> Coupled with the clearly erroneous legal instructions which are being given by the administrative law officers at the City of Chicago Department of Administrative Hearings, where they inform nonattorneys who appear before them representing corporations that you, quotation marks, 'You have the right to appeal this,' and they direct these people to the 6th Floor of Daley Center to file an appeal in these matters."

The trial court further questioned whether a nonattorney representing a corporate entity before the administrative hearings in the City might not also be engaged in the unauthorized practice of law. Plaintiff appealed.

¶ 9       The appellate court reversed and remanded. 407 Ill. App. 3d 822. The court noted that "appellate court decisions have differed in their adherence to the automatic application of the nullity rule," and held that, in the case at bar, the purposes underlying the nullity rule, protection of litigants and the public as well as the integrity of the court system, would not be furthered by its application. Accordingly, the appellate court reversed the trial court's decision and remanded for further proceedings.

¶ 10      We granted the City's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)), and allowed the Illinois State Bar Association to file an *amicus* brief on behalf of the City.

¶ 11                                ANALYSIS
¶ 12                        Unauthorized Practice of Law
¶ 13      We must first determine whether Van Tholen engaged in the unauthorized practice of law when he filed the complaints for administrative review on behalf of plaintiff corporation.

¶ 14      This court has the inherent power to define and regulate the practice of law in this state. *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371, 382 (2005). Our rules are intended to safeguard the public from individuals unqualified to practice law and to ensure the integrity of our legal system. *Sperry*, 214 Ill. 2d at 383. See also *Herman v. Prudence Mutual Casualty Co.*, 41 Ill. 2d 468, 479 (1969) (citing *Chicago Bar Ass'n v. Quinlan & Tyson, Inc.*, 34 Ill. 2d 116 (1966)); *City of Chicago v. Witvoet*, 12 Ill. App. 3d 654, 655-56 (1973) (requirements for practicing law are imposed for the "protection of litigants against the mistakes of the ignorant and the schemes of the unscrupulous and the protection of the court itself in the administration of its proceedings from those lacking the requisite skills").

¶ 15      There is no mechanistic formula to define what is and what is not the practice of law. *In re Discipio*, 163 Ill. 2d 515, 523 (1994); *People ex rel. Chicago Bar Ass'n v. Barasch*, 406 Ill. 253, 256 (1950). Rather, we examine the character of the acts themselves to determine if the conduct is the practice of law (*Quinlan & Tyson, Inc.*, 34 Ill. 2d at 120) and each case

is largely controlled by its own peculiar facts (*People ex rel. Chicago Bar Ass'n v. Tinkoff*, 399 Ill. 282, 289 (1948)).

¶ 16 Plaintiff contends that there was no unauthorized practice of law because Van Tholen merely filled in blanks on a simple form that did not require the use of any legal expertise. We disagree. It is not the simplicity of the form that is important but the fact that an appeal was pursued on behalf of a corporation by a nonattorney.

¶ 17 A corporation must be represented by counsel in legal proceedings. See *Nixon, Ellison & Co. v. Southwestern Insurance Co.*, 47 Ill. 444, 446 (1868) (as early as Lord Coke's time, corporations could not appear in person but had to appear by an attorney). See also *Nispel v. Western Union R.R. Co.*, 64 Ill. 311 (1872). This rule arises from the fact a corporation is an artificial entity that must always act through agents and there may be questions as to whether a particular person is an appropriate representative. For example, while an officer of a corporation, *i.e.*, an individual such as Van Tholen, may believe review of an administrative decision is in the best interests of a company, it may, in fact, not be. The interests of the corporate officers and that of the corporation, a distinct legal entity, are separate. See, *e.g.*, *Upjohn Co. v. United States*, 449 U.S. 383, 390-92 (1981) (rejecting proposition that senior managers and corporation have identical interests). It is not every case where the views or interests of a principal and the corporation mesh. By requiring an attorney to represent a corporation in legal proceedings, this problem is mitigated.

¶ 18 A complaint for administrative review is essential to preserve one's right to appeal an administrative decision and invokes the appellate review mechanism. The filing of the complaint affects the substantial legal rights of the party seeking administrative review, in this case, Downtown Disposal. As such, only an individual representing the corporation itself can ascertain whether it is best for a corporation to pursue review of an administrative decision and invoke the appellate mechanism.

¶ 19 Accordingly, when Van Tholen filed the complaints for administrative review, he engaged in the unauthorized practice of law. He was not an attorney representing the interests of the corporation and could not file for administrative review on behalf of Downtown Disposal.

¶ 20 Having reached this conclusion, we must now determine the consequences of Van Tholen's conduct and decide whether the complaints for administrative review were a nullity.

¶ 21                                                  Nullity Rule

¶ 22 Courts in this country, including this court, unanimously agree that a corporation must be represented by counsel in legal proceedings. However, courts disagree on the consequences the lack of representation has on actions taken by nonlawyers on behalf of a corporation. Some courts, including our appellate court, have held that such actions are a nullity and warrant dismissal, the entry of a default judgment against the corporation, or vacatur of any judgment rendered. The defect is deemed incurable and goes to the court's power to exercise subject matter jurisdiction. See *Siakpere v. City of Chicago*, 374 Ill. App. 3d 1079, 1081 (2007) (complaint for administrative review filed by corporate officer on behalf of corporation a nullity); *Midwest Home Savings & Loan Ass'n v. Ridgewood, Inc.*,

123 Ill. App. 3d 1001 (1984) (notice of appeal filed on behalf of corporation by person not entitled to practice law held to be a nullity); *Housing Authority v. Tonsul*, 115 Ill. App. 3d 739 (1983) (judgment void even if layperson merely signs complaint and all other appearances are by attorney). See also *Land Management, Inc. v. Department of Environmental Protection*, 368 A.2d 602 (Me. 1977); *Massongill v. McDevitt*, 1989 OK CIV APP 82, 828 P.2d 438 (1989); *Tracy-Burke Associates v. Department of Employment Security*, 699 P.2d 687 (Utah 1985); *Jadair Inc. v. United States Fire Insurance Co.*, 562 N.W.2d 401 (Wis. 1997).

¶ 23 Other jurisdictions take the approach that actions by nonattorneys on behalf of a corporation are curable defects, allowing the corporation a reasonable time to obtain counsel and make any necessary amendments. These courts liberally construe the rules of civil procedure and emphasize substance over form to advance the policy favoring resolution of cases on the merits. See, *e.g.*, *United States v. High Country Broadcasting Co.*, 3 F.3d 1244 (9th Cir. 1993); *Jones v. Niagara Frontier Transportation Authority*, 722 F.2d 20, 23 (2d Cir. 1983); *Southwest Express Co. v. Interstate Commerce Comm'n*, 670 F.2d 53 (5th Cir. 1982); *Strong Delivery Ministry Ass'n v. Board of Appeals*, 543 F.2d 32 (7th Cir. 1976); *United States v. 9.19 Acres of Land, More or Less, Situate in Marquette County, Michigan*, 416 F.2d 1244 (6th Cir. 1969); *Flora Construction Co. v. Fireman's Fund Insurance Co.*, 307 F.2d 413 (10th Cir. 1962); *Operating Engineers Local 139 Health Benefit Fund v. Rawson Plumbing, Inc.*, 130 F. Supp. 2d 1022 (E.D. Wis. 2001); *A-OK Construction Co. v. Castle Construction Co.*, 594 So. 2d 53 (Ala. 1992); *Boydston v. Strole Development Co.*, 969 P.2d 653, 656 (Ariz. 1998) (*en banc*); *Rogers v. Sonoma County Municipal Court*, 243 Cal. Rptr. 530, 530-33 (Cal. Ct. App. 1988); *BQP Industries, Inc. v. State Board of Equalization*, 694 P.2d 337, 341-42 (Colo. App. 1984); *Torry v. Leesburg Regional Medical Center*, 769 So. 2d 1040, 1045-46 (Fla. 2000); *Rainier Holdings, Inc. v. Tatum*, 622 S.E.2d 86 (Ga. Ct. App. 2005); *Oahu Plumbing & Sheet Metal, Ltd. v. Kona Construction, Inc.*, 590 P.2d 570 (Haw. 1979); *Hawkeye Bank & Trust, National Ass'n v. Baugh*, 463 N.W.2d 22, 26 (Iowa 1990); *First Wholesale Cleaners Inc. v. Donegal Mutual Insurance Co.*, 792 A.2d 325 (Md. Ct. Spec. App. 2002); *Waite v. Carpenter*, 496 N.W.2d 1 (Neb. Ct. App. 1992); *KSNG Architects, Inc. v. Beasley*, 109 S.W.3d 894 (Tex. Ct. App. 2003); *Graham v. David County Solid Waste Management & Energy Recovery Special Service District*, 1999 UT App 136, ¶¶ 15-16, 979 P.2d 363; *Starrett v. Shepard*, 606 P.2d 1247, 1253-54 (Wyo. 1980).

¶ 24 This court has recently discussed the nullity rule on two occasions wherein we declined to apply it. See *Applebaum v. Rush University Medical Center*, 231 Ill. 2d 429 (2008); *Ford Motor Co. v. Sperry*, 214 Ill. 2d 371 (2005). However, as the City maintains, these two cases are distinguishable. Neither involved a nonattorney representing a corporation in a legal proceeding. The City urges us to follow the line of authority holding that any unauthorized practice of law by a nonattorney is a nullity. We decline to do so.

¶ 25 A recent decision of the Seventh Circuit, *In re IFC Credit Corp.*, 663 F.3d 315 (7th Cir. 2011), authored by Judge Posner, provides insight. The question before the court was whether a corporate bankruptcy petition, signed only by the president of the company who was not an attorney, rendered the proceedings void or, in state court terms, a nullity. *In re IFC Credit Corp.*, 663 F.3d at 317. If so, the court lacked jurisdiction over the matter and the

error could not be cured by amending the petition, signed by an attorney, even one day after the original petition had been filed. The Seventh Circuit held that the proceedings were not void.

¶ 26 First, the court concluded that the rule prohibiting corporations from litigating without counsel could not be deemed a rule of subject-matter jurisdiction. *In re IFC Credit Corp.*, 663 F.3d at 319. In so finding, the court noted that the United States Supreme Court has "taken a sharp turn toward confining dismissals for want of subject-matter jurisdiction to cases in which the federal tribunal has been denied by the Constitution or Congress or a valid federal regulation the authority to adjudicate a particular type of suit." *In re IFC Credit Corp.*, 663 F.3d at 319. The court stated that "[t]he primary distinction is thus between classes of case that the Constitution or legislation declares off limits to the federal courts and errors in the conduct of cases that are within limits." *In re IFC Credit Corp.*, 663 F.3d at 320. The court reasoned that bankruptcy proceedings are "the type[s] of proceeding[s] that Congress has authorized federal courts to handle, while the rule barring lay representation of a corporation concerns the conduct of cases that are within that authority." *In re IFC Credit Corp.*, 663 F.3d at 320.

¶ 27 The court then further found that the consequences which result from a finding that the court lacks jurisdiction can be severe. In some cases, the statute of limitations may have run, thus depriving the corporation of access to the courts. Where the statute of limitations has not run, requiring a "do over" is costly, particularly if the lack of representation is discovered late in a protracted litigation. The court concluded that these consequences "are not appropriate punishments for pro se litigation by a corporation." *In re IFC Credit Corp.*, 663 F.3d at 320. Finally, the court posited there was "no danger that litigation by unrepresented corporations will flourish" because judges dislike *pro se* litigation and "will be vigorous enforcers of the rule that bars it, except in cases like this where the violation was utterly inconsequential." *In re IFC Credit Corp.*, 663 F.3d at 321.

¶ 28 The court reasoned that the rule against nonattorneys representing corporations "should be enforced, but sanctions for its violation should be proportioned to the gravity of the violation's consequences." *In re IFC Credit Corp.*, 663 F.3d at 321. In *In re IFC Credit Corp.*, there were no adverse consequences by the filing error. As such, there was no reason to impose any sanction, let alone dismissal. *In re IFC Credit Corp.*, 663 F.3d at 321.

¶ 29 We find the reasoning of *In re IFC Credit Corp.* sound. This court's definition of subject matter jurisdiction is similar to that of the supreme court precedent. See *In re Luis R.*, 239 Ill. 2d 295, 300 (2010) ("This court defines 'subject matter jurisdiction' as a court's power ' "to hear and determine cases of the general class to which the proceeding in question belongs." ' [Citation.]"); *Wood v. First National Bank of Woodlawn*, 383 Ill. 515, 522 (1943) ("Jurisdiction of the subject matter is the power to adjudge concerning the general question involved, and if a complaint states a case belonging to a general class over which the authority of the court extends, the jurisdiction attaches and no error committed by the court can render the judgment void."). In this case, as in *In re IFC Credit Corp.*, our constitution has authorized the legislature to provide the circuit court with the power to review administrative proceedings. Thus, in this case, as in *In re IFC Credit Corp.*, the rule prohibiting lay representation concerns the conduct of cases and the orderly administration

of justice, not subject matter jurisdiction.

¶ 30    Further, we agree with the Seventh Circuit that a *per se* nullity rule is unreasonable and that sanctions for violating the rule against the unauthorized practice of law "should be proportioned to the gravity of the violation's consequences." As we reasoned in *Applebaum*, because the consequences of applying the nullity rule to a case can be harsh, it should be invoked only where it fulfills the purposes of protecting both the public and the integrity of the court system from the actions of the unlicensed, and where no other alternative remedy is possible. *Applebaum*, 231 Ill. 2d at 439 (citing *Sperry*, 214 Ill. 2d at 382).

¶ 31    We hold there is no automatic nullity rule. Instead, the circuit court should consider the circumstances of the case and the facts before it in determining whether dismissal is proper. The circuit court should consider, *inter alia*, whether the nonattorney's conduct is done without knowledge that the action was improper, whether the corporation acted diligently in correcting the mistake by obtaining counsel, whether the nonattorney's participation is minimal, and whether the participation results in prejudice to the opposing party. See, *e.g.*, *Szteinbaum v. Kaes Inversiones y Valores, C.A.*, 476 So. 2d 247, 252 (Fla. Dist. Ct. App. 1985); *Starrett v. Shepard*, 606 P.2d 1247, 1253-54 (Wyo. 1980). The circuit court may properly dismiss an action where the nonlawyer's participation on behalf of the corporation is substantial, or the corporation does not take prompt action to correct the defect. See, *e.g.*, *Joseph Sansone Co. v. Bay View Golf Course*, 97 S.W.3d 531, 532 (Mo. Ct. App. 2003); *Niklaus v. Abel Construction Co.*, 83 N.W.2d 904, 911 (Neb. 1957).

¶ 32    In the instant case, the trial court should have allowed Downtown Disposal to amend its complaints for administrative review. It is evident that Van Tholen was unaware he could not prepare and sign the complaints on behalf of the corporation. In fact, the administrative law officer advised Van Tholen that: "You have a right to appeal the decision to the Circuit Court within 35 days of today's date, and you would do that in Room 602 of the Daley Center." Even though the corporation was the party before the administrative hearing, Van Tholen appeared on its behalf and he, as a layperson, could reasonably have interpreted the "you" to mean him personally. Likewise, Van Tholen's participation was minimal. Van Tholen filled in a preprinted blank form with plaintiff's name, address, the date of the administrative decision, and the docket numbers. Van Tholen made no unscrupulous attempt to litigate on behalf of the corporation. Downtown Disposal retained counsel prior to any involvement by the City in the case other than having been served. As this case demonstrates, the absence of counsel at the threshold stage of the lawsuit—filing the complaint for administrative review—could not have prejudiced the City. As such, Downtown Disposal's commencement of the proceedings without the assistance of counsel was essentially inconsequential. See *In re IFC Credit Corp.*, 663 F.3d at 321. For all practical purposes, Downtown Disposal was represented by counsel before the City became a player in the action, so neither the City nor the trial court was ever in the position of having to deal with a corporation unrepresented by counsel.

¶ 33    Further, deeming the complaints a nullity would be harsh: it "would yield the ironic result of prejudicing the constituents of the corporation, the very people sought to be protected by the rule against the unauthorized practice of law." *Szteinbaum*, 476 So. 2d at 250. See also *First Wholesale Cleaners Inc. v. Donegal Mutual Insurance Co.*, 792 A.2d 325, 331 (Md.

Ct. Spec. App. 2002) (filing of notice of appeal on behalf of corporation is "a protective course of action, meant to preserve the corporation's right to appeal"). Thus, rather than protecting the litigant (Downtown Disposal), application of the nullity rule would prejudice it. Downtown Disposal would lose its right to appeal and, thus, any remedy as might be provided for by law.

¶ 34    Moreover, there is clearly an alternative remedy to dismissal—allowing amendment of the complaints to add counsel's signature. Thus, it would indeed be a very harsh consequence to the corporation to apply the nullity rule to the case at bar.

¶ 35    We further disagree with the City that, if we affirm the appellate court, nonattorney representation of corporations will become commonplace. We agree with the Seventh Circuit that circuit court judges will be vigorous enforcers of the rule prohibiting nonattorneys from representing corporations.

¶ 36    Based on the foregoing principles, we reject the City's contention that *any* act of legal representation undertaken by a nonattorney on behalf of a corporation renders the proceedings void *ab initio*. We hold that the lack of an attorney's signature on a complaint for administrative review filed on behalf of a corporation does not render the complaint null and void or mandate dismissal in all instances. In situations where a nonattorney signs a complaint for administrative review on behalf of a corporation, the trial court should afford the corporation an opportunity to retain counsel and amend the complaint if the facts so warrant.

¶ 37                                    CONCLUSION

¶ 38    We conclude that the trial court erred in dismissing Downtown Disposal's complaints for administrative review based on the fact they were signed by Van Tholen because the lack of an attorney's signature was not jurisdictional and, therefore, did not render the proceedings null and void. Moreover, in the instant case, application of the nullity rule would be a harsh result since neither of the purposes underlying the rule are implicated and an alternative remedy was available. Accordingly, we affirm the appellate court's judgment, which reversed the circuit court's dismissal of Downtown Disposal's complaints and remanded for further proceedings.

¶ 39    Appellate court judgment affirmed.

¶ 40    JUSTICE KARMEIER, dissenting:

¶ 41    Today, for the first time, the Supreme Court of Illinois has sanctioned the unauthorized practice of law by refusing to follow the nullity rule requiring dismissal of a complaint filed in circuit court on behalf of a corporation by a lay person with no legal training of any kind. Effectively overruling an unbroken line of precedent dating back before the Civil War, it gives legal recognition to proceedings initiated by lay persons on behalf of third parties and concludes that whether such proceedings should be dismissed is now discretionary with the trial court. Then, without affording the circuit court an opportunity to exercise such

discretion, as would normally be done where a new legal standard has been adopted for the first time on review, it takes the extraordinary step of undertaking the analysis itself and then decreeing that the complaints filed by the lay person on behalf of the corporation in this case must be reinstated. And it justifies that result on the dubious grounds that reinstatement is necessary to protect this corporation from what it perceives as "a very harsh consequence," overlooking that the company on whose behalf it has altered the law had repeatedly violated city ordinances and then defaulted when charges were filed against it; that the corporation appeared in the case only after fines were imposed on it and then attempted to have the defaults set aside by claiming lack of notice, even though it is clear from the record that the violation notices had been sent to the very address provided by the corporation itself; that the corporation did not, in fact, act diligently to secure the assistance of a licensed attorney, but instead waited for six months after the complaints for administrative review were filed by its lay president before obtaining counsel to represent it; that the corporation was subsequently involuntarily dissolved by the State of Illinois before the case was even argued in our court, precluding the corporation from conducting future business in Illinois and significantly diminishing the possibility that the City will ever be able to recover the fines the corporation owes; and that, in any event, the corporation could have readily avoided any possible "harshness" here had it simply done what corporations in Illinois have always been required to do: hire a lawyer before seeking relief from the courts. Under all of these circumstances, I believe that the corporation's complaints were properly dismissed by the circuit court and that the appellate court erred when it reversed the circuit court's judgment. I therefore respectfully dissent.

¶ 42    The legal principles presented by this appeal are well established. Because of the prohibition against the unauthorized practice of law, our court has long recognized that no person is permitted to commence an action in an Illinois court of record on behalf of another unless he or she is an attorney. *Robb v. Smith*, 4 Ill. 46 (1841). A lay person may appear only in his or her own behalf. *City of Chicago v. Witvoet*, 12 Ill. App. 3d 654, 655 (1973). A lay person may therefore not initiate proceedings on behalf of someone else (see *Ratcliffe v. Apantaku*, 318 Ill. App. 3d 621, 626 (2000); *Blue v. People*, 223 Ill. App. 3d 594, 596-97 (1992); *Leonard v. Walsh*, 73 Ill. App. 2d 45, 48 (1966)), including a partnership (*National Bank of Austin v. First Wisconsin National Bank*, 53 Ill. App. 3d 482, 488-89 (1977)) or a corporation (*Berg v. Mid-America Industrial, Inc.*, 293 Ill. App. 3d 731, 737 (1997)). If a corporation wishes to seek redress in an Illinois court, the proceeding must be brought by an attorney acting on its behalf. *Edwards v. City of Henry*, 385 Ill. App. 3d 1026, 1036 (2008); see *People ex rel. Schacht v. Main Insurance Co.*, 114 Ill. App. 3d 334, 340 (1983) (corporation may only appear by attorney); *Tom Edwards Chevrolet, Inc. v. Air-Cel, Inc.*, 13 Ill. App. 3d 378, 379-80 (1973) (same); *Nispel v. Western Union R.R. Co.*, 64 Ill. 311, 313-14 (1872). An action filed on behalf of a corporation without an attorney is null and void *ab initio*. *Adair Architects, Inc. v. Bruggeman*, 346 Ill. App. 3d 523, 525-26 (2004); *Berg v. Mid-America Industrial, Inc.*, 293 Ill. App. 3d at 737; *Aarrow Ambulance v. Davis*, 16 Ill. App. 3d 318, 319 (1974); *Remole Soil Service, Inc. v. Benson*, 68 Ill. App. 2d 234, 238-40 (1966); see 4 Ill. L. and Prac. *Attorneys and Counselors* § 12 (2007). Because such an action is void *ab initio*, it cannot result in a valid judgment even if all subsequent appearances on

behalf of the corporation are made by a duly licenced attorney and the attorney adopts the pleadings improperly prepared by a nonlawyer agent for the corporation. *LVNV Funding, LLC v. Trice*, 2011 IL App (1st) 092773, ¶ 18; *Edwards v. City of Henry*, 385 Ill. App. 3d 1026, 1036 (2008); *Housing Authority v. Tonsul*, 115 Ill. App. 3d 739, 740 (1983); see *Marken Real Estate & Management Corp. v. Adams*, 56 Ill. App. 3d 426, 428-29 (1977).

¶ 43 This so-called nullity rule has been applied to invalidate a notice of appeal filed on behalf of a corporation by a person who is not a licensed attorney. *Midwest Home Savings & Loan Ass'n v. Ridgewood, Inc.*, 123 Ill. App. 3d 1001 (1984). It has likewise been invoked to invalidate a proceeding seeking administrative review in circuit court where the complaint for administrative review was filed by a lay officer of the corporation seeking review and not by a licensed attorney. *Siakpere v. City of Chicago*, 374 Ill. App. 3d 1079, 1081 (2007). That is precisely the situation before us here. Pursuant to the Illinois authority set forth above, the circuit court was therefore entirely correct in granting the City's motion to dismiss Downtown Disposal's complaints for administrative review.

¶ 44 Contrary to the view taken by the appellate court and adopted by the majority's opinion, this court's decision in *Applebaum v. Rush University Medical Center*, 231 Ill. 2d 429 (2008), does not support relaxation of the nullity rule under the situation present in this case. In contrast to the circumstances before us here, *Appelbaum* was not a case where a lay person was engaged in the unauthorized practice of law. To the contrary, the person whose conduct was at issue there was a licensed attorney. He was simply on inactive status. Emphasizing that

> "an individual who has (i) graduated from law school; (ii) satisfied this court's character and fitness requirements; (iii) passed the bar examination; and (iv) obtained a license to practice law in this state does not become 'unlicensed' by simply choosing to change his or her ARDC registration status from active to inactive,"

we concluded in *Applebaum* that the nullity rule should not be applied and that the circuit court did not err when it denied a motion to dismiss a cause of action filed by an attorney on inactive status. *Applebaum*, 231 Ill. 2d at 446-48.

¶ 45 That the pleadings were filed by an attorney and there was no issue as to the unauthorized practice of law were pivotal to the analysis in *Applebaum*. Those factors were likewise central to our decision in *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371 (2005), where we reaffirmed the validity of the nullity rule, but found the rule inapplicable to a situation where the lawyers in question were licensed but had merely failed to register properly, noting that "duly licensed attorneys who practice with a law firm that lacks Rule 721(c) registration do not, by virtue of the unregistered nature of the law firm, engage in the unauthorized practice of law." *Id.* at 390.

¶ 46 In this case, of course, the prohibition against the unauthorized practice of law is implicated directly and unequivocally. The complaint was not filed by a lawyer, but by a lay agent of the corporation with no legal credentials or training of any kind. That is something

the law of this state simply does not permit and has never permitted.[1]

¶ 47      It is true, as the appellate court noted (407 Ill. App. 3d at 834), that *Applebaum* says that "where a person who is not licensed to practice law in Illinois attempts to represent another party in legal proceedings, this rule *permits* dismissal of the cause, thereby treating the particular actions taken by that person as a nullity." (Emphasis added.) *Applebaum*, 231 Ill. 2d at 435. This language, however, cannot be cited for the proposition that this court now views the nullity rule as discretionary in cases involving proceedings initiated by lay persons. That is so for two reasons. First, the authority cited by *Applebaum* for this statement of the law is *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d at 390. But what we actually said in *Ford Motor Credit Co.* was that "it is well settled that the 'effect of a person's unauthorized practice on behalf of a party is to *require* dismissal of the cause or to treat the particular actions taken by the representative as a nullity.' [Citations.]" (Emphasis added.) *Id.* If something is required, it is not optional. To this extent, *Applebaum*'s characterization of our holding in *Ford Motor Credit Co.* is inaccurate.

¶ 48      Second, the language we used in *Applebaum* must be taken in context. As previously noted, *Applebaum* did not involve the unauthorized practice of law by a lay person. The issue before us was whether the nullity rule should be applied to a situation where the person who filed the legal action was duly licensed as an attorney, but had merely changed his registration status to inactive.

¶ 49      Where the courts of Illinois have declined to apply the nullity rule, it has been in situations like the one in *Applebaum* where an actual lawyer was involved or appeared to be involved in the case at the time the proceeding was initiated. See *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371 (nullity rule not applied to situation where law firm representing plaintiff corporation had simply failed to register under Supreme Court Rule 721); *Pratt-Holdampf v. Trinity Medical Center*, 338 Ill. App. 3d 1079 (2003) (trial court erred in finding plaintiff's complaint to be a nullity where she had consciously chosen to be represented by a licensed Illinois attorney before proceeding; had received guidance, direction and assurance from that attorney prior to filing her complaint; and was represented by licensed counsel, including the lawyer who initially counseled her, at every step of proceedings after the initial complaint was filed); *McEvers v. Stout*, 218 Ill. App. 3d 469 (1991) (nullity rule should not be applied where complaint was filed by out-of-state lawyer not licensed in Illinois); *Moushon v. Moushon*, 147 Ill. App. 3d 140 (1986) (nullity rule held inapplicable where the complaint was signed by plaintiff corporation's president, but the complaint recited that the corporation "comes by its attorney" and the trial court record disclosed that the corporation was, in fact, represented by a licensed attorney at every stage of the proceeding); *Janiczek v. Dover Management Co.*, 134 Ill. App. 3d 543, 547 (1985) (error to dismiss complaint as void *ab initio* under nullity rule where the action brought by an attorney who was disbarred,

---

[1]The rules of our court now allow corporations to defend themselves in certain small claims proceedings through any officer, director, manager, etc., without regard to whether that person is a lawyer. But this is not a small claims proceeding and the corporation is bringing suit, not defending against a claim. Ill. S. Ct. R. 282(b) (eff. July 1, 1997).

reasoning that dismissal was unreasonably harsh sanction against an innocent lay person who never "consciously elected to be represented by a layman"). None of these circumstances are present here. The person who filed the complaint for administrative review on behalf of Downtown Disposal was a lay person. He was not and had never been admitted to the bar of Illinois or any other jurisdiction, and there is no indication in the record that the corporation was not fully aware of his lay status.

¶ 50    The majority opinion cites numerous decisions from other jurisdictions which it claims support the view that actions by nonattorneys on behalf of a corporation are curable defects. As recently noted by this court, however, the fact that "everybody's doing it" is scarcely a litmus test for the validity of a legal proposition. See *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 249 (2010). "Although decisions from other jurisdictions can provide guidance where precedent from Illinois is lacking" (*id.*), "Illinois courts do not look to the law of other states when there is relevant Illinois case law available" (*In re Estate of Walsh*, 2012 IL App (2d) 110938, ¶ 45). Such authority is available here. To borrow a phrase from *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d at 249, "we do not write today on a blank slate." To the contrary, there is abundant precedent from Illinois to support the circuit court's decision to apply the nullity rule in this case. That is the precedent which should guide our decision. *People v. Ward*, 2011 IL 108690, ¶ 28.

¶ 51    I note, moreover, that of the many decisions from other jurisdictions listed by the majority, only a very few actually support the position my colleagues adopt today. If any movement toward relaxing the prohibitions against the unauthorized practice of law and rejection of the nullity rule may be discerned from those decisions, and I am not sure it can, the shift is scarcely a deluge. In truth, it is barely a trickle. Let us go through the list.

¶ 52    *United States v. High Country Broadcasting Co.*, 3 F.3d 1244 (9th Cir. 1993), a *per curiam* opinion by the Ninth Circuit, did not involve the nullity rule or even a situation in which a court proceeding was initiated by a lay person on behalf of a third party, but it did invoke the principle that a "corporation may appear in federal court only through licensed counsel." Relying on that principle, the court affirmed entry of a default judgment entered against a corporation after the attorney who filed the answer and cross-complaint on behalf of the corporation withdrew, the corporation's lay president and sole shareholder then attempted to undertake defense of the company, and the company failed to retain counsel after being directed by the court to do so.

¶ 53    In *Jones v. Niagara Frontier Transportation Authority*, 722 F.2d 20 (2d Cir. 1983), the court reaffirmed the "venerable and widespread" rule that a corporation may litigate only through a duly licensed attorney (*id.* at 22) and held that a corporation could not circumvent that rule by assigning its claims to the corporation's sole shareholder, who was a lay person. In so doing, it cited with approval a point made in an earlier decision which, as will be noted later in this dissent, is also relevant here and which the majority should heed:

> "To allow [the lay individual] to appear *pro se* in this suit would be allowing him to flout a well-established and purposeful public policy by means of a procedural device. [The lay individual] chose to accept the advantages of incorporation and must now bear the burdens of that incorporation; thus, he must have an attorney present

-13-

the corporation's legal claims. [Citation.]" *Id.* at 23.

¶ 54    *Southwest Express Co. v. Interstate Commerce Comm'n*, 670 F.2d 53 (5th Cir. 1982), was a *per curiam* opinion which dismissed a petition for administrative review of a decision by the Interstate Commerce Commission filed on behalf of a corporation by the company's president and principal shareholder, who was a nonlawyer, on the grounds that corporations may only appear in court through counsel and while the company's president could represent himself in court, he had no basis for asserting a personal claim based on the administrative decision at issue. That is the same situation here, of course, and the decision therefore supports, rather than undermines, the dismissal order entered by the circuit court in this case.

¶ 55    *Strong Delivery Ministry Ass'n v. Board of Appeals*, 543 F.2d 32 (7th Cir. 1976), also supports the circuit court's decision here. In *Strong*, two actions were consolidated on appeal, both involving the right of lay persons to bring proceedings in federal court on behalf of third parties. Plaintiff in the first action was a nonprofit corporation which brought a civil rights action against certain defendants. It appeared through its president and founder, who was a clergyman, not a lawyer. The district court dismissed the action without reaching the merits because the corporation was not represented by counsel, and the corporation sought appellate review.

¶ 56    In the second action, defendants moved to dismiss a plaintiff corporation's appeal on the grounds that the notice of appeal had been filed by the corporation's lay president and the corporation was not represented by a lawyer. In another *per curiam* opinion, the court of appeals affirmed the judgment in the first action and granted the motion to dismiss the appeal of the second action, adhering to established law that corporations may not proceed in federal court through lay representation, but must appear through counsel.

¶ 57    The next case cited by the majority is *United States v. 9.19 Acres of Land, More or Less, Situate in Marquette County, Michigan*, 416 F.2d 1244 (6th Cir. 1969), which involved a condemnation proceeding brought by the federal government to obtain property owned by a closely held corporation. The sole issue on the appeal was whether the trial court erred when it ruled that the corporation could not appear and defend through its lay president and refused to grant a continuance to permit the corporation to hire a lawyer. Reaffirming the principle that corporations may only appear in court through counsel, the court of appeals upheld the trial court's determination that the lay president could not represent the corporation in the proceedings. Because the corporation's land had already been taken and the sole issue was that of compensation, a matter over which there was apparently no urgency, and because the corporation's president had not been aware until a week before trial that he would not be permitted to represent the corporation himself and had made efforts to secure legal representation, the court of appeals concluded that the trial court abused its discretion when it denied a continuance to permit the corporation to obtain qualified counsel. But whether a trial court abuses its discretion with respect to granting a corporation additional time to obtain legal representation to help *defend* it has no bearing on the nullity rule and the validity of proceedings *initiated* by lay persons on behalf of corporations. Again, therefore, this authority does not support the result reached by the majority in this case.

¶ 58    *Flora Construction Co. v. Fireman's Fund Insurance Co.*, 307 F.2d 413 (10th Cir. 1962),

is likewise inapposite. As with the preceding case, it did not involve the viability of an action brought on behalf of a corporation by a lay person, the issue before us here. It was a challenge to an order by the trial court denying a corporation the right to appear and defend itself in a civil action through its president, who was not a lawyer. After ruling that the trial court's order was not appealable, the court of appeals elected to treat the papers presented by the corporation as an application for leave to file a petition for writ of *mandamus* to compel the trial court to permit it to appear by its nonlawyer president. It then denied the application for *mandamus* based on the "rule [which] is well established that a corporation can appear in a court of record only by an attorney at law." *Id.* at 413-14.

¶ 59      *Operating Engineers Local 139 Health Benefit Fund v. Rawson Plumbing, Inc.*, 130 F. Supp. 2d 1022 (E.D. Wis. 2001), is the last of the federal cases itemized by the majority, and it does not help them either because, once again, it does not involve an attempt by a lay person to initiate proceedings in court on behalf of a corporation. The issue in *Operating Engineers Local 139*, a United States district court case which was still at the trial court level, was whether the plaintiff was entitled to entry of a default judgment in its favor where the answer filed by the defendant corporation was signed by a nonlawyer agent of the company who was not admitted to the bar. The United States district court reaffirmed that corporations may appear only through counsel and held that the "attempted answer" filed by the corporation's lay agent could not stand, but after noting, *inter alia*, that nullity principles had not previously been applied to defective answers, it concluded that the appropriate course was to grant the corporation additional time to appear and defend by counsel before finding it in default. *Id.* at 1023-24.

¶ 60      The majority's string of federal citations thus turns out to yield nothing that helps it. What then of its even lengthier string of state citations? Here is what they actually say.

¶ 61      The first case on the list turns out to be a one-paragraph disposition from Alabama, *A-OK Construction Co. v. Castle Construction Co.*, 594 So. 2d 53 (Ala. 1992). Unlike our case, *A-OK Construction* did not involve a situation where any of the proceedings were initiated by a nonlawyer. What happened there was that after judgment was entered against a company in the trial court and the company's attorney filed the notice of appeal, the attorney withdrew. The only brief filed on behalf of the company was signed by the company's president, who was a lay person. After noting that companies are only permitted to appear in court through an attorney and pointing out that it could dismiss the appeal based on the company's failure to file a brief or prosecute the appeal, the court determined that because the proper outcome of the case was apparent, it would suspend its normal procedural rules and simply affirm the judgment on the merits.

¶ 62      Next is *Boydston v. Strole Development Co.*, 969 P.2d 653 (Ariz. 1998) (*en banc*). Of all the cases from other jurisdictions offered up by the majority so far, this is the first that actually offers some support for its position. There, after judgment was entered against a corporation and the corporation's attorneys withdrew from the case, a nonlawyer officer of the company filed a notice of appeal on behalf of the company, something that was unquestionably improper. The plaintiff-appellees could have objected but, unlike the City in this case, they did not. It was the court of appeals that identified the problem, and it dismissed. As soon as the dismissal order was entered, counsel immediately appeared on

behalf of the corporation and the case was briefed and argued on the merits. The appellate court subsequently determined that it had been correct to dismiss the appeal based on the improper notice of appeal filed by the nonlawyer, but the Arizona Supreme Court reversed, reinstated the appeal, and remanded for resolution of the appeal on the merits. In so doing, it concluded that while the absence of a lawyer's signature on the notice of appeal rendered the notice defective, Arizona law affords litigants a reasonable opportunity to cure such defects before dismissal is ordered, at least where the notice was neither misleading nor prejudicial to the appellee. *Id.* at 656-57.

¶ 63       *Rogers v. Municipal Court for the Sonoma County Judicial District*, 243 Cal. Rptr. 530 (Cal. App. 1988), a California case which the majority cites next, involved a situation where a corporation sought a *de novo* hearing in court regarding its obligation to pay back wages to an employee following an adverse ruling by the state's labor commissioner. The request for *de novo* review was signed by the corporation's president, who was not a lawyer, and the employee challenged it on that basis. The appellate court concluded, however, that filing the particular type of notice necessary to request a *de novo* review did not constitute the practice of law under California law and therefore did not render the notice invalid. *Id*. at 532. As noted earlier, the majority in our case has correctly concluded that the conduct at issue here *does* constitute the unauthorized practice of law. *Rogers* therefore does not support the majority's argument.

¶ 64       *BQP Industries, Inc. v. State Board of Equalization*, 694 P.2d 337, 341-42 (Colo. App. 1984), is distinguishable for the same reason. It involved the filing of property tax appeals with an administrative body by corporate taxpayers. The requisite appeal forms were signed by nonlawyers on behalf of the corporations. All other steps in appeal were handled by attorneys. The appeal forms were ultimately challenged on the grounds that they should have been signed by lawyers, but the court of appeals rejected the notion that completion of the forms involved the practice of law and held that they were "sufficiently informal to permit completion by a corporation through its officer or director." *Id.* at 342.

¶ 65       With *Torrey v. Leesburg Regional Medical Center*, 769 So. 2d 1040 (Fla. 2000), the majority takes us next to Florida, but the results are no more supportive of its view. Unlike the situation before us here, *Torrey* did not involve a proceeding initiated on behalf of a corporation by a lay person untrained in the law. At issue there was the validity of a wrongful-death action alleging medical malpractice filed by an out-of-state attorney. Defendants moved to dismiss on the grounds that because the complaint was filed by an attorney who was not licensed in Florida, it was a nullity. The circuit court agreed and the appellate court affirmed, but the state's supreme court reversed and remanded, holding that the defect was subject to correction and that the unauthorized practice concerns were more appropriately dealt with through other mechanisms, including injunctive relief and disciplinary action against the offending out-of-state lawyer. *Id*. at 1045. This result is consistent with Illinois case law, which, as I have discussed, has relaxed the nullity rule where an actual lawyer was involved or appeared to be involved in a case at the time the proceeding was initiated. Illinois courts do not take that approach where, as here, the proceeding is brought by a lay person.

¶ 66       *Rainier Holdings, Inc. v. Tatum*, 622 S.E.2d 86 (Ga. App. 2005), a Georgia case cited by

my colleagues, did not involve the viability of a legal proceeding initiated by a lay person on behalf of another party, but was another of the cases addressing the consequences of having a lay person sign an answer to a complaint filed against a corporate defendant. There was no discussion as to the nullity rule, and as with the other similar cases cited by the majority, it is therefore distinguishable.[2]

¶ 67    In *Oahu Plumbing & Sheet Metal, Ltd. v. Kona Construction, Inc.*, 590 P.2d 570 (Haw. 1979), a corporate defendant moved to set aside entry of a default judgment against it through its vice president, a nonlawyer, arguing that the corporate defendant had not received notice of a change in the time and place of trial, resulting in its failure to appear and defend. Plaintiff's attorney objected on the grounds that as a nonlawyer, the vice president was not authorized to represent the corporation. The trial court agreed and on that basis refused to disturb the default judgment. On appeal, the state supreme court affirmed, concluding that the vice president, as a nonattorney officer of the corporate defendant, "should not have been allowed to act at all as the in-court representative of [the defendant and on] that ground alone, we would be able to decide that the result reached by the court below was proper." *Id*. at 576.

¶ 68    Next comes *Hawkeye Bank & Trust, National Ass'n v. Baugh*, 463 N.W.2d 22, 26 (Iowa 1990), where a bank sued a closely held corporation to set aside a fraudulent conveyance of farmland. The defendant corporation's president, who was not a lawyer, attempted to represent the corporation. When trial of the cause was set to begin, the bank's attorney objected that the president's appearance on behalf of the corporation constituted the unauthorized practice of law and should not be permitted. The trial court agreed and, after denying the president's request for a continuance to obtain an attorney, heard the bank's evidence and entered judgment for the bank. On appeal, the Iowa Supreme Court agreed with the trial court that the corporation could only appear through counsel, but thought that under the circumstances, most notably the fact that no objection was raised as to the president's lay status until the actual morning of the trial, it was an abuse of discretion for the court to have proceeded without affording an opportunity for the corporation to obtain legal representation. Again, that is not this case. Here, the corporation's lay agent attempted to *initiate* proceedings in court, and his right to do so was challenged at the outset of the proceedings.

¶ 69    As with *Boydston v. Strole Development Co.*, 969 P.2d 653 (Ariz. 1998), the Arizona case discussed above, the majority is on firmer ground with *First Wholesale Cleaners Inc. v. Donegal Mutual Insurance Co.*, 792 A.2d 325 (Md. App. 2002), a case involving a lawsuit by a dry cleaning company against its insurance company. In that case, the insurance company successfully moved to dismiss with prejudice after the attorney for the dry cleaning company sought and was granted leave to withdraw from the case. The sole shareholder of the dry cleaning company then filed a notice of appeal, having been advised by the former

_____

[2]Georgia is also a special case because, at least according to the very next decision cited by the majority, *Oahu Plumbing & Sheet Metal, Ltd. v. Kona Construction, Inc.*, 590 P.2d 570 (Haw. 1979), it is "the only state which permits a corporation to be represented by a non-attorney agent." *Id.* at 575 n.10.

-17-

lawyer that he was entitled to do so, attempting to retain replacement counsel and succeeding in doing so after the case was docketed. The insurance company moved to dismiss the appeal on the grounds that the shareholder's action constituted the unauthorized practice of law and rendered the appeal a nullity. In denying that request, the Maryland Court of Special Appeals held that "[p]leadings filed and actions taken by a non-lawyer corporate officer in a legal action are subject to be stricken or held to be a nullity," but determined that such action was not warranted in this particular case "wherein the representation was very limited" and "[t]he record does not reflect that the representation was made with knowledge of its impropriety, it was followed within a reasonable time by proper representation through an attorney admitted to practice before the court, and the other party was not substantially prejudiced thereby." *Id.* at 333-34.

¶ 70    If *First Wholesale Cleaners Inc.* gives hope to the majority's view, *Waite v. Carpenter*, 496 N.W.2d 1 (Neb. Ct. App. 1992), the next case it cites, takes it away. There a nonlawyer personal representative of an estate filed five wrongful-death actions for medical negligence with the purpose of recovering damages. Defendants successfully moved to dismiss or for summary judgment on the grounds that the nonlawyer was engaged in the unauthorized practice of law, rendering the pleadings he had filed a nullity. The Nebraska Court of Appeals unanimously affirmed, adding that the nonlawyer was not entitled to additional time to retain counsel before the matter was dismissed because affording him that option would mean that he "would have engaged in the unauthorized practice of law to the possible detriment of the heirs, the defendants, and the courts with complete impunity." *Id*. at 7.

¶ 71    In the majority's next cited case, *KSNG Architects, Inc. v. Beasley*, 109 S.W.3d 894 (Tex. Ct. App. 2003), the president of the defendant corporation, a lay person, attempted to file an answer on the company's behalf. The trial court struck the answer and immediately entered judgment against the company. On appeal, the Texas Court of Appeals affirmed the principle that corporations may not appear through an individual officer who is not a lawyer and agreed that the answer filed by the company's president was therefore defective. It concluded, however, that the trial court abused its discretion when it struck the answer without affording the company an opportunity to hire an attorney and replead. In reaching this result, it was careful to distinguish the situation from one where the offending corporation initiates the litigation (*id.* at 897), and it did not rely on the nullity doctrine. Rather, it treated the motion to strike as tantamount to a "plea of abatement," a mechanism under Texas civil procedure by which one can prevent a suit from going forward based on facts outside the pleading until the defect is cured. Under Texas law, a plea of abatement may not be used to decide the merits of a case and judges are supposed to allow parties a reasonable opportunity to amend pleadings to correct defects alleged in a plea in abatement. *Id.* at 898-99. Because those standards were not followed by the trial court in the case, the Court of Appeals reversed and remanded for further proceedings.

¶ 72    *Graham v. Davis County Solid Waste Management & Energy Recovery Special Service District*, 1999 UT App 136, 979 P.2d 363, involved an action alleging that the defendant had violated Utah's Government Records Access and Management Act. The action was originally brought by an unincorporated association which had not complied with the state's assumed-name statute and the association was represented by a nonlawyer, which Utah law

does not permit. Those problems were subsequently cured when the nonlawyer was substituted as the plaintiff in his own name. The trial court then entered summary judgment against the plaintiff on the merits. The appellate court affirmed. In so doing, it first rejected an argument by defendant that the problems which existed before the individual plaintiff was substituted in should have rendered the pleading a complete nullity. In the view of the Utah court, the problems were simply technical in nature. *Id.* ¶ 16. This is of little help here, of course, because under Illinois law, the unauthorized practice of law is more than a technicality.

¶ 73     This brings us to the majority's final case, *Starrett v. Shepard*, 606 P.2d 1247 (Wyo. 1980). In that case, the plaintiff, a man named Shepard, operated a motor vehicle repair business and a bulk retail-wholesale outlet for petroleum products. He sued the Starretts "on an account stated for work, labor and services and for interest thereon." The Starretts, in turn, brought a third-party action against Northwest Carriers, Inc. Following a trial on the merits, the court entered judgment for Shepard on his claim against Starretts and for Northwest on the Starretts' claim against it. On appeal, the Wyoming Supreme Court affirmed the judgment in favor of Shepard but reversed the judgment in favor of Northwest and against the Starretts and remanded for a new trial on that claim. In so doing, it rejected an argument by the Starretts that because a lay agent of Northwest had initially filed a motion to quash service, they were entitled to entry of a default judgment as a matter of law and no new trial should be held. That has no bearing on this case, however, because it involved a situation where the corporation was the defendant, not one where a lay agent had initiated legal proceedings on behalf of the company. Moreover, the action by the lay agent was a limited and tangential part of the proceedings. The filing of responsive pleadings and all subsequent aspects of the company's defense were handled by counsel and the Starretts were not substantially prejudiced by the lay person's actions on behalf of the company.

¶ 74     It thus appears that of the numerous decisions invoked by the majority from federal and state jurisdictions, only two, *Boydston v. Strole Development Co.*, 969 P.2d 653 (Ariz. 1998), from Arizona, and *First Wholesale Cleaners Inc. v. Donegal Mutual Insurance Co.*, 792 A.2d 325 (Md. App. 2002), an intermediate appellate court case from Maryland, provide any support for my colleagues' view that the nullity rule should be relaxed where, as here, court proceedings are initiated by a lay person. Most are readily distinguishable. Some are fully consistent with settled Illinois law and are therefore directly contrary to the position taken by the majority in the matter before us here.

¶ 75     The majority next finds insight in the Seventh Circuit's recent decision in *In re IFC Credit Corp.*, 663 F.3d 315 (7th Cir. 2011), and its discussion of subject matter jurisdiction conferred on Article III federal courts. Of course, jurisdiction of Illinois courts is determined by the Illinois Constitution of 1970, not Article III of the Constitution of the United States, and this court has made the point that state and federal jurisdictional principles differ in significant ways. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 254 n.4 (2010). But even to the extent that this court's definition of subject matter jurisdiction corresponds to federal law, I do not believe that principles of subject matter jurisdiction are helpful to understanding and applying the nullity rule. "Subject matter jurisdiction refers to the court's power to hear and determine cases of the general class to which the proceeding in question

belongs." (Internal quotation marks omitted.) *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 27. When courts apply the nullity rule in Illinois, it has nothing whatever to do with their authority to act. The nullity rule pertains, instead, to the legal effect of actions by lay persons who have no authority to assert claims on behalf of third parties and

> "is grounded in the fact that there are risks to individual clients and to the integrity of the legal system inherent in representation by an unlicensed person: The purpose of the nullity 'rule is *** to protect litigants against the mistakes of the ignorant and the schemes of the unscrupulous and to protect the court itself in the administration of its proceedings from those lacking requisite skills.' " *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d at 389-90 (quoting *Janiczek v. Dover Management Co.*, 134 Ill. App. 3d 543, 546 (1985)).

¶ 76    The nullity rule thus implicates considerations separate and distinct from considerations of subject matter jurisdiction. Courts clearly possess subject matter jurisdiction of the type of cases in which the nullity rule has arisen. They may nevertheless declare that conduct occurring in the course of the proceedings is done without authority and therefore has no legal effect. When that unauthorized conduct consists of the filing of a complaint by a lay person, it cannot operate to invoke the court's jurisdiction. Because the person filing the pleading had no legal capacity to file it, it is as if it were never filed at all. That is why we characterize it and the proceedings which flow from it as a nullity and why any resulting judgment can have no possible legal effect.

¶ 77    Again, this is not a novel or unsettled question in Illinois. Until the appellate court in this case misapplied our decision in *Applebaum*, the case law uniformly recognized that a judicial proceeding initiated by a lay person on behalf of a corporation was invalid and must be dismissed. No contrary conclusion is possible without sanctioning the unauthorized practice of law, as the Illinois State Bar Association correctly warned in the *amicus* brief it was permitted to file in the case. If application of the nullity rule is to be discretionary rather than mandatory, it necessarily follows that there will be situations in which the unauthorized practice of law will now be permitted in our courts.

¶ 78    Less than a year ago, our court amended its rules to expand the authority of the Attorney Registration and Disciplinary Commission to enforce the prohibition against the unauthorized practice of law through proceedings in circuit court. Ill. S. Ct. R. 752(b) (eff. Dec. 7, 2011). That action was motivated by a recognition of the serious and growing harm to the public and the administration of justice posed by the unauthorized practice of law and the need for enhanced mechanisms to combat its spread. Through its decision here today, the majority has tacitly rejected those concerns and set the judicial branch on a course that will inevitably foster rather than inhibit unauthorized practice problems.

¶ 79    The majority attempts to justify this extraordinary change in course by minimizing the significance of the lay person's actions in this case. It describes his participation as minimal, involving little more than inserting basic data into a preprinted form. *Supra* ¶ 32. In making this argument, however, it forgets that earlier in the disposition, it expressly rejected the argument advanced by the corporation that "there was no unauthorized practice of law

-20-

because [the lay person] merely filled in blanks on a simple form that did not require the use of any legal expertise." *Supra* ¶ 16. "It is not the simplicity of the form that is important," the majority held, "but the fact that an appeal was pursued on behalf of a corporation by a nonattorney." *Id*.

¶ 80    In so holding, the majority echoes a point we made nearly 50 years ago in *Chicago Bar Ass'n v. Quinlan & Tyson, Inc.*, 34 Ill. 2d 116, 123 (1966), where we observed:

> "Many aspects of law practice are conducted through the use of forms, and not all of the matters handled require extensive investigation of the law. But by his training the lawyer is equipped to recognize when this is and when it is not the case. Neither counsel nor *amici* have suggested any practicable way in which an exception to the general rule can be made where only the use of forms is involved, or where the transaction is a 'simple' one. Mere simplicity cannot be the basis for drawing boundaries to the practice of a profession. A pharmacist, for example might be competent to prescribe for many of the simpler ailments, but it takes a medical background to recognize when the ailment is simple. Protection of the public requires that only licensed physicians may prescribe or treat for any ailment, regardless of complexity or simplicity. And protection of the public requires a similar approach when the practice of law is involved."

¶ 81    So it is in this case. The mechanics of filing a complaint for administrative review are never difficult. What can be very difficult indeed is assessing whether pursuing an appeal, including administrative review in circuit court, is worthwhile and appropriate in a particular case. To make that kind of judgment, legal training and experience are essential. When the lay person took it upon himself to file the complaint for administrative review in circuit court, Downtown Disposal was deprived of that critical threshold legal advice. As a result, it was impelled into a course of action which may ultimately prove contrary to its best interests if, for example, it cannot substantiate valid grounds for setting aside the defaults or, if it succeeds at that, it is unable to establish a valid defense to the ordinance violation charges.

¶ 82    This is not a situation involving an indigent *pro se* litigant who is forced to represent himself because he lacks the resources to retain counsel. What we have here is a corporation's president who simply made the decision to personally file a complaint for administrative review on behalf of his company. At no time did the company seek leave to proceed *in forma pauperis*, and so far as I can tell, it has never claimed that there was some impediment which hampered its ability to secure counsel to assist it with the filing in the first instance.

¶ 83    Although Downtown Disposal was evidently not a large corporation, it was a corporation nevertheless. The decision to organize and operate as a corporation brings with it substantial economic benefits. With those benefits come burdens and limitations which must be borne even by small corporations. See, *e.g.*, *In re Zisook*, 88 Ill. 2d 321, 339 (1981). That includes the obligation to retain counsel when the corporation wishes to initiate proceedings in circuit court, a point made by *Jones v. Niagara Frontier Transportation Authority*, 722 F.2d 20 (2d Cir. 1983), one of the federal cases discussed earlier which is cited by the majority itself.

¶ 84    Even if I agreed with the majority's substantive analysis, which I do not, I could not agree with the manner in which the majority has chosen to dispose of this case. Whether the majority's decision to revise the nullity rule is sound or not, it is undeniable that the discretionary standard my colleagues establish today represents a fundamental change in the law. As noted at the outset of this disposition, this decision marks the first time ever our court has held that the nullity rule does not require automatic dismissal of a proceeding brought in circuit court on behalf of a corporation by a lay person with no legal training of any kind.

¶ 85    Where, as here, our court determines on review that the standards which governed resolution of the case in the trial court were incorrect and should be rejected, the appropriate remedy is normally to remand the matter to the circuit court so that it can be litigated under the proper legal standard. See, *e.g.*, *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL 111871, ¶ 45; *People v. Masterson*, 207 Ill. 2d 305, 330 (2003). Remand is particularly appropriate where the legal standards we have articulated call for the exercise of discretion by the trial court. See, *e.g.*, *People v. Longoria*, 375 Ill. App. 3d 346, 351 (2007). That is precisely the situation presented by the majority's analysis. Instead of reversing outright the trial court's dismissal based on the nullity rule as it previously existed, we should, at a minimum, afford the trial court an opportunity to reevaluate whether dismissal of Downtown Disposal's complaint for administrative review is appropriate under the new nullity rule principles outlined in the majority's opinion.

¶ 86    Without pausing to even acknowledge the possibility of allowing the circuit court the chance to reconsider its dismissal order, the majority instead takes it upon itself to weigh the various factors it now deems relevant, concluding that "it would indeed be a harsh consequence to the corporation to apply the nullity rule to the case at bar." I respectfully disagree.

¶ 87    To support its view, the majority claims it is "evident that Van Tholen[, the corporation's president,] was unaware he could not prepare and sign the complaints on behalf of the corporation." *Supra* ¶ 32. But ignorance of the law is no excuse (*People v. Hollins*, 2012 IL 112754, ¶ 34), "[a] principle deeply imbedded in our system of jurisprudence" (*People v. Izzo*, 195 Ill. 2d 109, 115 (2001)). Surely my colleagues do not mean to suggest that we should carve out an exception to this principle for corporate executives.

¶ 88    In any case, it is not "evident" at all that Van Tholen did not actually understand that he was prohibited by law from initiating legal proceedings on behalf of the corporation in circuit court. In fact, we cannot ascertain from this record what Van Tholen knew or did not know, for the record contains no testimony or statements from him regarding this matter. The majority's assertion is simply a supposition based solely on the general instructions Van Tholen received from an administrative law officer who worked for the City and the officer's use of the word "you" in explaining what needed to be done next. I note, however, that as a corporate executive, Van Tholen knew or should have known that there was no instance in which Illinois law permitted corporate executives who were lay persons to initiate legal proceedings in court on behalf of their corporate employers. If we are to speculate, the more likely assumption would be that someone in Van Tholen's position would have assumed that by "you," the administrative officer meant "your company."

¶ 89     At a minimum, Van Tholen should surely have realized that because the administrative officer was employed by the City, not the Judicial Branch of the State of Illinois, issues regarding the filing of judicial proceedings should have been directed to the clerk of the circuit court. As it was, Van Tholen checked with no one. He filed the complaint on behalf of the corporation, paid the filings fees, caused summons to be issued and then waited for the City to respond.

¶ 90     From reading the majority's opinion, one might get the impression that this was a situation where the corporation acted promptly to correct the lack of the legal representation it needed to prosecute these proceedings. In fact, that was not the case at all. The invalid complaint for administrative review filed by Van Tholen on the corporation's behalf was file stamped by the clerk of the circuit court on October 16, 2008. No lawyer entered an appearance on behalf of the corporation until April of 2009, six months later.[3]

¶ 91     The majority attempts to convince us that we need to fashion relief here in order to save Downtown Disposal and the corporation's "constituents" (whoever they may be) from unfair prejudice. Let us not forget, however, that the scales of justice have two sides. We must therefore also be mindful of the harm which the City of Chicago and its citizens have already sustained as a result of Downtown Disposal's actions.

¶ 92     Downtown Disposal did not come to the attention of municipal authorities because of its charitable acts. It was cited by the City on four separate occasions for obstructing alleys with dumpsters for construction debris without the necessary permits and, in one of those instances, for also failing to affix reflective material to the dumpster's corners. There is no dispute that the ordinances in question served a legitimate public safety purpose and that their placement of the dumpsters without prior city approval presented a public safety concern.

¶ 93     The violations occurred on December 26, 2007; January 2, 2008; January 25, 2008; and March 19, 2008. Three of the four notices involved placement of a dumpster at a location for which the company had originally obtained a permit, but the permit had expired. In applying for the permit, an employee of the company had been required to provide the company's address. The address used corresponded to the one which the City had on file for the company. The violation notices were sent to that address in the manner provided by law. The company failed to appear, however, and defaults were entered against it in all four cases. In addition, the corporation was fined $1,500 plus fees for each violation.

¶ 94     The company made no effort to contest the violations until after the fines were imposed and it realized that it owed the City a total of more than $6,000. As grounds for setting aside

---

[3]The majority asserts that "[f]or all practical purposes, Downtown Disposal was represented by counsel before the City became a player in the action." *Supra* ¶ 32. "Player" is not a status recognized by our administrative review laws and procedures, so I am not sure what the majority means here. It seems to me, however, as I am sure it seemed to the City, that the City became "a player" in this action as soon as Van Tholen attempted to file his complaint naming the City and caused summons to be issued in 2008. That was well before the corporation had a lawyer to represent it.

the violations and resulting fines, the corporation, through its president, argued that the address to which the notices had been sent, an address it had provided itself, was out-of-date and that it had never been properly served. The record contains a handwritten letter by the corporation's president to someone in the City asking that the records be updated to reflect a Blue Island, Illinois, address for the company instead of the address provided in the company's permit application. That letter, however, is dated September 16, 2008, nearly nine months *after* the first violation and approximately six months *after* the fourth violation.

¶ 95    In challenging the sufficiency of the notices, the corporation's president argued at the administrative level that the City should have used the address which the company has used in registering with the Illinois Secretary of State, but that was problematic too. The printout the company provided from the Secretary of State's office was from a report filed October 17, 2008, well after the violations. Moreover, neither of the two mailing addresses it listed, one for the company's president and one for its agent, corresponded to the Blue Island address which the company's president had submitted to the City the previous month. One was in Chicago, the other in Indiana.

¶ 96    Aside from these arguments, which the administrative law officer understandably rejected, the corporation proffered nothing that would warrant setting aside any of the multiple findings of violations or suggest that the fines imposed on it were improper. And yet, almost five years after Downtown Disposal was first cited, the case has yet to be resolved, and so far as we can tell, the fines have never been paid. Moreover, it seems highly unlikely at this point that they will ever be paid. Public records of the office of the Illinois Secretary of State, of which courts may take judicial notice (see *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 938 (1998)), indicate that while this appeal was pending, Downtown Disposal changed its name to SOL of Blue Island, Inc., and, shortly before oral argument in March of 2012, the corporation was involuntarily dissolved. To be sure, the dissolution did not abate the proceedings against the corporation (805 ILCS 5/12.30(c) (West 2010)). As a practical matter, however, the likelihood that the City will succeed in collecting any of the fines is surely diminished. In light of all these circumstances, I do not share the majority's view that the City sustained no prejudice.

¶ 97    While application of the nullity rule may seem harsh in some cases, this is not such a case. And in any event, the solution is simple, straightforward, and obvious in every case. If you are a corporation in need of relief from the courts, all you need do to avoid the problem encountered by Downtown Disposal here is hire a lawyer.

¶ 98    For the foregoing reasons, I would reverse the judgment of the appellate court and affirm the judgment of the circuit court dismissing, as a nullity, the complaints for administrative review filed in that court on behalf of Downtown Disposal by its president, a lay person who was not and has never been authorized to practice law in Illinois or any other jurisdiction. I therefore respectfully dissent.


¶ 99    CHIEF JUSTICE KILBRIDE and JUSTICE THOMAS join in this dissent.