**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200337-U

Order filed October 28, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* APPLICATION OF THE COUNTY TREASURER OF WILL COUNTY, For Order of Judgment and Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes for the Year 2010 and Prior Years | ) ) ) ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| (Bank of America, N.A., | ) ) | |
| Petitioner-Appellant, | ) ) | Appeal No. 3-20-0337 Circuit No. 14-TX-160 |
| v. | ) ) | |
| Caz Creek IL REO, LLC; MTAG Cust. for MTAG Caz Creek IL, LLC; and Timothy E. Uher and Michelle M. Uher, Individually and as Trustees u/t/a Known as the Uher Family Trust, | ) ) ) ) ) ) | The Honorable Theodore J. Jarz, |
| Respondents-Appellees). | ) ) | Judge, presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Holdridge and Wright concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   In an appeal in a tax deed case, the appellate court held that the trial court
                properly granted summary judgment for respondents on count I of petitioner's

combined pleading (a motion and a petition for relief from judgment), which alleged that the tax deed to the subject property was void because the holder of the tax sale certificate had failed to obtain and record the tax deed within a year after the redemption period had expired as required by section 22-85 of the Property Tax Code (35 ILCS 200/22-85 (West 2010)). The appellate court, therefore, affirmed the trial court's judgment.

¶ 2       Petitioner, Bank of America, N.A. (BOA), filed a second amended pleading seeking to have a tax deed to certain real property declared void or, in the alternative, to vacate the order that had directed the tax deed be issued. Respondents, a prior holder of the tax deed (Caz Creek IL REO, LLC[1]) and the current owners of the property (Timothy and Michelle Uher), opposed BOA's request. The parties filed cross-motions for summary judgment. After a hearing, the trial court granted respondents' motions for summary judgment and denied BOA's motion. BOA appeals. We affirm the trial court's ruling.

¶ 3                                        I. BACKGROUND

¶ 4       David and Jennifer Auw owned the subject property in Homer Glen, Will County, Illinois. In April 2008, the Auws executed a mortgage on the property in favor of LaSalle Bank, N.A., to secure a revolving line of credit that had been extended to the Auws. The mortgage was duly recorded. Later that year, LaSalle Bank merged with, or was acquired by, BOA.[2]

¶ 5       On November 21, 2011, the Will County Treasurer sold the subject property to a registered bidder at the annual tax sale for the 2010 delinquent real property taxes. The registered bidder who purchased the property was listed as "MTAG CUST BISBEE LLC SH9FF6A6" (referred to hereinafter as Bisbee). Bisbee was issued a tax certificate for the

---

[1] Although the filings and signature block of the attorney for Caz Creek IL REO, LLC (Caz REO), indicate that the attorney is representing both Caz REO and Caz Creek IL, LLC (Caz Creek), in this appeal, we will generally refer to the Caz respondent here as Caz REO, since Caz REO was generally listed as the Caz entity that was filing the relevant documents in the trial court.

[2] An assignment of the Auws' mortgage from LaSalle Bank to BOA was not recorded until several years after the merger.

purchase. As required by the Property Tax Code (Code), the Auws were sent a notice that the property had been sold at a tax sale (see 35 ILCS 200/22-5 (West 2010)). At the time of the tax sale, the subject property was improved with a single-family home. The redemption period, therefore, was initially set to expire on May 21, 2014 (see 35 ILCS 200/21-350(b) (West 2010) (setting the redemption period as two years and six months from the date of the tax sale when the property is improved with a single-family home)).

¶ 6        On March 1, 2012, a notice of extension of the redemption period (the first extension) was allegedly filed with the county clerk (hereinafter referred to as the clerk or the county clerk), although the original cannot be found in the county clerk's records. The first extension was signed by James P. Meeks and extended the redemption period to June 13, 2014. Even though the tax sale certificate at that time was held by Bisbee, the signature block under Meeks's signature on the first extension read as follows:

> "JAMES P. MEEKS, President, MTAG Services, LLC
> Servicer for MTAG CAZ CREEK IL LLC."

¶ 7        On April 5, 2012, Bisbee assigned the tax sale certificate to "MTAG Cust for MTAG Caz Creek IL LLC" (Caz Creek). The assignment was signed by James P. Meeks and was registered with the county clerk.

¶ 8        On June 12, 2014, a second notice of extension of the redemption period (the second extension) was filed with the county clerk. The second extension was signed by Eric H. Wudtke as authorized agent for Caz Creek and extended the redemption period to November 18, 2014.

¶ 9        On June 23, 2014, Caz Creek filed a petition for tax deed in the trial court. Notices were sent to those individuals and/or entities with an interest in the property as required by the Code (see 35 ILCS 200/22-10 through 22-25 (West 2014)), including BOA. The tax deed proceeding was subsequently continued by Caz Creek several times thereafter.

¶ 10    On May 11, 2015, the tax sale certificate was assigned by Caz Creek to "Caz Creek IL REO, LLC" (Caz REO). The assignment was signed by William J. Cohane and was registered with the county clerk.

¶ 11    On May 27, 2015, Caz Creek filed an application in the trial court for an order directing the county clerk to issue a tax deed to the subject property. Caz Creek alleged in the application that the original redemption period had been set to expire on May 21, 2014, but was extended to, and had expired on, November 18, 2014. The same day that the application was filed, the trial court held a prove-up hearing on the application. During the hearing, Caz Creek requested, and was allowed, to substitute Caz REO as the applicant for the tax deed. At the conclusion of the hearing, the trial court entered an order directing the county clerk to issue a tax deed for the subject property to Caz REO. Thereafter, on July 8, 2015, Caz REO was issued, and recorded, the tax deed. The property was later conveyed to Chicago Trust Company as trustee of a certain specified trust and was subsequently sold in June 2016 to Timothy and Michelle Uher.[3]

¶ 12    On April 28, 2017, BOA filed its combined pleading in this case. In count I of the pleading, BOA moved the trial court to declare the tax deed void pursuant to section 22-85 of the Code (35 ILCS 200/22-85 (West 2010)). In count II of the pleading, BOA sought, pursuant to section 22-45 of the Code (35 ILCS 200/22-45 (West 2010)) and section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)), to have the trial court vacate its order directing the issuance of the tax deed. The pleading was subsequently amended two times.

¶ 13    In the first count of the second amended pleading, the only count that is relevant in this appeal, BOA alleged that: (1) on November 21, 2011 (the tax sale date), the subject property was sold to Bisbee for the 2010 general real estate taxes; (2) a tax sale certificate for the property was

_____
[3] The Uhers later put the property into a family trust.

4

issued to Bisbee on December 2, 2011; (3) the original redemption period for the property expired on May 21, 2014, without being extended; (4) on April 18, 2017, one of BOA's attorneys, Amanda L. Moressi, personally inspected the county clerk's files for the property, and the county clerk verified that only one notice of extension of the redemption period had been filed and that it had been filed on June 12, 2014; (5) the June 12, 2014, extension was of no legal effect because it was filed after the redemption period had expired; (6) pursuant to section 22-85 of the Code, the tax sale certificate and the tax sale upon which it was based became absolutely void without the right to reimbursement after the one-year period to take out and record the tax deed had expired; (7) the trial court lacked subject matter jurisdiction to enter its May 2015 order directing the issuance of the tax deed; and (8) the tax deed that was issued to Caz REO was void as a matter of law because the tax deed had not been taken out and recorded within one year after the redemption period had expired, as required by section 22-85 of the Code. In support of its allegations, BOA attached to its pleading numerous supporting documents, including copies of the Auws' mortgage with LaSalle Bank; bank information showing that LaSalle Bank had merged with, or had been acquired by, BOA; the assignment of the Auws' mortgage from LaSalle Bank to BOA; the tax sale certificate; the first and second assignments of the certificate; the second extension of the redemption period (the only extension that was contained in the county clerk's records according to BOA); the section 22-5 take notice (35 ILCS 200/22-5 (West 2010)) for the property, dated February 28, 2012, that was sent to the Auws, which listed Bisbee as the purchaser or assignee and the end of the redemption period as June 13, 2014; the affidavit of Moressi; and the tax deed.

¶ 14        Respondents filed motions to dismiss count I of BOA's second amended pleading pursuant to sections 2-615 and/or 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-

619 (West 2016)).[4]  The motions alleged that dismissal was warranted because count I of BOA's second amended pleading was an improper collateral attack on the tax deed, was defeated by Bisbee's extension of the initial redemption period in March 2012 (the first extension), and was also defeated by the Uhers' subsequent *bona fide* purchase of the property for value. Respondents attached as exhibits to their motions to dismiss a file-stamped copy of the first extension (allegedly file-stamped by the county clerk's office) and a certified copy of the county clerk's judgment book showing that the first extension had been listed in the judgment book as one of the entries for the property.  Although not quite clear from the record on appeal, apparently the file stamp on the first extension was in black and white ink and was not in the blue ink that was often associated with an original file stamp from the county clerk's office.

¶ 15       In April 2018, a hearing was held on respondents' motions to dismiss.  By the time of the hearing, the parties had fully briefed the issues that had been raised before the trial court in the motions.  At the conclusion of the hearing, after listening to the oral arguments of the attorneys, the trial court took the case under advisement.  The following month, the trial court issued a written ruling denying respondents' motions to dismiss.  In so doing, the trial court treated count I of BOA's second amended pleading as a section 2-1401 petition.  The trial court commented in its ruling that it could not consider the alleged first extension in ruling upon the motions to dismiss because the alleged first extension was not part of the county clerk's records, had not been presented in certified form, was not supported by affidavit, had not otherwise been authenticated, and was not subject to judicial notice.

¶ 16       In September 2018, BOA filed a motion for summary judgment on count I of its second amended pleading (the motion to have the tax deed declared void).  BOA alleged in the motion

---

[4] Caz REO's motion to dismiss was directed at both counts of BOA's second amended pleading. As noted previously, however, only count I is at issue in this appeal.

6

that the tax deed was void without the right to reimbursement pursuant to section 22-85 of the Code because the holder of the tax sale certificate had failed to take out and record the tax deed within a year after the redemption period had expired. BOA claimed in the motion that the initial redemption period had not been extended and had expired on May 21, 2014, and that the extension that occurred after that date, on June 12, 2014, was of no legal effect. BOA pointed out in the motion that the only extension on file with the county clerk's office was the June 12, 2014, extension. BOA attached to the motion numerous supporting documents, most or all of which had previously been attached as exhibits to BOA's second amended pleading.

¶ 17 One of BOA's supporting documents, which is now of relevance to the issue raised in this appeal, is the affidavit of Amanda L. Moressi. Moressi stated in her affidavit that she was one of BOA's attorneys (outside counsel), and that on April 18, 2017, she went to the county clerk's office and requested copies of all of the notices of extension of redemption period that had been filed with the clerk's office for the subject property. In response to Moressi's request, Josh Yunker, an employee of the clerk's office, told Moressi that only one notice of extension had been filed for the property and gave Moressi a copy of the June 12, 2014, notice of extension (the second extension). Moressi also requested, and was given by Yunker, a copy of the section 22-5 take notice that had been filed with the county clerk's office after the tax sale. The filing date on the take notice was March 2, 2012. Later that same day (April 18, 2017), Moressi called the county clerk's office and spoke to clerk employee, Cindy Dean. Dean confirmed that only one notice of extension of redemption period had been filed with the clerk's office for the subject property and that it was filed on June 12, 2014.

¶ 18 Respondents filed cross-motions for summary judgment and attached to those motions various supporting documents, including a copy of the alleged file-stamped first extension; the

7

affidavits of William J. Cohane, Cindy Dean, and Joshua Atlas; and certified copies of the portions of the county clerk's judgment book that pertained to the subject property.

¶ 19        The information provided in respondents' summary judgment affidavits can be summarized as follows.[5]  William J. Cohane stated in his affidavit that he was currently the president and chief executive officer (CEO) of Cazenovia Creek Investment Management, LLC (Cazenovia), which was the manager of Caz REO.  Prior to serving in that position, Cohane had primary management responsibility for each of the entities that owned the tax lien to the subject property.  One of Cohane's responsibilities as president and CEO of Cazenovia was to manage all vendor relationships for Caz REO.  MTAG Services was the current servicer for Caz REO and was also the servicer for the previous owners of the tax lien at issue in this case.  At all relevant times, MTAG Services was the agent and authorized to act for Bisbee, and all future lien holders, including Caz Creek.  Cohane was responsible for managing the relationship between MTAG Services (as servicer) and Bisbee (as lien holder for the property) and between MTAG Services (as servicer) and Caz Creek (as lien holder for the property).  As servicer, MTAG Services performed all of the administrative tasks associated with collecting or foreclosing on a particular lien on behalf of the lien holders.  James P. Meeks was the president and CEO of MTAG Services and held that position at all relevant times.  On November 21, 2011, Bisbee became the lien holder for the subject property.  Bisbee acquired the certificate of purchase on December 2, 2011.  On March 1, 2012, a notice of extension was filed with the county clerk. Attached to Cohane's affidavit as Exhibit No. 1 was a true and accurate copy of that notice of extension as it existed in "Caz's records," which Cohane had obtained from Caz REO's attorney. The reference to Caz Creek in Meek's signature block in the first extension represented an

---

[5] Only the information that is relevant to the issue raised in this appeal has been provided here.

8

immaterial error as Meeks always had Cohane's authority to sign and file the March 2012 extension on behalf of Bisbee.

¶ 20    Cindy Dean stated in her affidavit that she was currently the assistant chief deputy in the county clerk's office. After reviewing the county clerk's judgment book, Dean determined that there were two tax sale extensions posted for the subject property. One extension was filed on March 1, 2012, and extended the redemption period to June 13, 2014; the other extension was filed on June 12, 2014, and extended the redemption period to November 18, 2014. For tax levy years 2010 and prior, the clerk's office computer had only one field to input extension dates. Therefore, the only extension date listed in the computer would be for the last filed extension; all previous extensions would be deleted by inputting the most current extension. A female attorney came into the clerk's office requesting a certified copy of the judgment book and the original extension notice. The clerk's office gave the attorney a copy of the judgment book and extension to June 13, 2014, and explained to the female attorney that the clerk's office did not maintain originals of extensions (that the originals would have been shredded).

¶ 21    Joshua Atlas stated in his affidavit that he was currently employed by Buckeye Financial, LLC, as its managing member. In his role at Buckeye, Atlas managed tax lien portfolios for clients in Illinois and various states. As part of his job duties, Atlas assisted corporate entities in preparing and filing municipal tax filings, including notices for extensions of redemption periods. In July 2011, while Atlas was employed by Buckeye, he entered into an independent contractor acquisition and servicing agreement with MTAG Services on Buckeye's behalf. Pursuant to that agreement, Buckeye was responsible for filing in the county clerk's office notices for extensions of redemption periods for MTAG Services. Although Atlas did not have an independent recollection of filing the notice of extension of redemption period for MTAG

9

Services, he was the key contact at Buckeye for the MTAG Services account. Buckeye had a specific procedure for filing documents with the county clerk. Buckeye's procedure for filing a notice of extension of redemption period for MTAG Services was as follows: MTAG Service's corporate office would prepare the notice, and an MTAG Services employee would sign the notice in his or her official capacity; the notice would then be sent from MTAG Services to Buckeye; and upon receipt of the executed extensions of redemption periods, Buckeye would deliver the extensions to the county clerk's office. The filing of the notice of extension of redemption period was within Buckeye's contractual duties at the time, and Buckeye consistently performed its contractual duties.

¶ 22    While BOA's and respondents' motions for summary judgment were pending, BOA filed a motion pursuant to Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013) to strike respondents' summary judgment affidavits or, in the alternative, to conduct discovery (the motion to strike). BOA alleged in the motion that: (1) Cohane's affidavit should be stricken because the statements made in the affidavit were not based upon Cohane's personal knowledge, because the affidavit was self-serving and was based upon unsupported assertions and opinions, and because Cohane was not qualified to testify to the business records of MTAG Services; (2) Dean's affidavit should be stricken because the affidavit contained inadmissible hearsay information and because the statements made in the affidavit were not based upon Dean's personal knowledge; and (3) Atlas's affidavit should be stricken because the statements made in the affidavit were not based upon Atlas's personal knowledge and because Atlas was not qualified to testify about the business records of MTAG Services. Respondents filed responses and opposed BOA's motion to strike.

¶ 23    In August 2019, on a date when the case had been scheduled in the trial court for a hearing on the motion to strike, BOA was granted leave to conduct Rule 191(b) depositions and withdrew its Rule 191(a) motion to strike respondents' affidavits.[6,7]  BOA later deposed William Cohane and two county clerk employees, Brit Hitchins and Joshua Yunker, and filed copies of those depositions with the trial court to be considered in the summary judgment proceedings.

¶ 24    Of relevance to this appeal, William Cohane provided testimony in his deposition that was similar to the statements that he had made in his affidavit.  Cohane again confirmed that MTAG Services was the third-party servicer of all of Cazenovia's Illinois tax lien assets and had the authority to act for Bisbee and all future lien holders.  More specifically, Cohane stated that James Meeks was authorized to file an extension for Bisbee and all of Cazenovia's entities based on Cazenovia's structure with MTAG Services.  Cohane further confirmed that he believed that the signature block under Meeks's signature on the first extension contained a scrivener's error and should have stated that Meeks was signing the extension on behalf of Bisbee, rather than Caz Creek.

¶ 25    Brit Hitchins testified in his deposition that he began working in the county clerk's office in July 2015 and had been the assistant chief deputy at the clerk's office since May 2017. Hitchins was initially responsible for the tax levy extensions department, but, after Cindy Dean retired, Hitchins's position was extended to encompass the tax redemption department as well. Dean did not train Hitchins for the position before she retired.  During his deposition, Hitchins was shown and questioned about a document (referred to hereinafter as the tax redemption manual) that listed the procedures for the county clerk's office in handling extensions of

---

[6] It is unclear from the record on appeal whether a hearing was actually held on BOA's motion to strike.

[7] Although not quite clear from the record, it appears that BOA later renewed its motion to strike in its brief in support of its motion for summary judgment.

deadlines to pay for tax sales. Hitchins did not have any involvement in writing the tax redemption manual; the manual had been written by Dean. With regard to extensions of redemption periods, the clerk's office required tax buyers to file with the clerk's office a notice of extension of redemption period that would list the tax sale certificate number, the parcel number of the property involved, and the date to which the redemption period was extended. That way, the clerk's office had the ability to determine the new end date for the period of redemption. In addition, the tax redemption manual required the tax buyer to present two copies of the written extension notice to the clerk's office—one copy for the clerk's office and the other for the tax buyer. Both copies would be time stamped by the clerk's office, and the clerk's copy would be filed with the other notices of extension. According to Hitchins, the clerk's office would not extend the redemption period based solely upon a period of redemption end date listed in a take notice. Instead, the clerk's office required the tax buyer to file a separate certificate of extension of the redemption period with the clerk's office.

¶ 26    When Hitchins was asked during his deposition about the clerk's policy for destruction of documents, he stated that the State had mandated guidelines about what the clerk's office was supposed to retain and for how long of a time period. Pursuant to those guidelines, take notices were to be kept for three years following settlement of the case (either through redemption of the property taxes, issuance of a tax deed, or obtainment of a sale in error). Notices of extension, on the other hand, were to be disposed of three years from the calendar year's end. An extension notice filed in 2012, therefore, would be available for disposal on the last day of 2015. When it was time for documents to be destroyed, the clerk's office would submit a disposal application to the county's records management department, and the records management department would

12

send the disposal application to the State for approval. Disposals would usually be conducted by the clerk's office once a year.

¶ 27    Joshua Yunker testified in his deposition that he had been hired by the county clerk's office in 2014 as a deputy clerk. In May 2017, Yunker's job title was changed to Accounting Assistant II. Yunker currently worked in both the tax extension and tax redemption departments at the county clerk's office. Yunker's job responsibilities in the redemption department included taking in redemption payments (to redeem the tax sale) and take notices, extending redemption dates, and handling questions from tax buyers and homeowners. For a tax buyer to extend a redemption date, the clerk's office would need to receive a written request for extension from the tax buyer with the tax buyer's name and the date to which the tax buyer wanted the redemption period extended. Upon receiving an extension notice, the clerk's office would examine the notice to make sure that it was being filed within the period of redemption so that the period could be extended. The clerk's office would then time stamp the notice and record the extension in the paper judgment book, which was now kept digitally. When Yunker was asked during his deposition if the clerk's office had ever used take notices to extend a redemption period, he stated that the clerk's office did do so when Cindy Dean was the supervisor (prior to May 2017). According to Yunker, if a take notice listed an initial period of redemption that had been extended without a separate notice of extension having been filed, the clerk's office would extend the initial redemption period based solely upon the take notice. The only take notices that were used as extensions, however, were the initial take notices (the section 22-5 take notices). The clerk's office no longer followed that procedure and would now require a separate notice of extension to be filed.

¶ 28   During his testimony, Yunker confirmed that at one point, he had advised an attorney who had come into the county clerk's office that only one notice of extension had been filed in this particular case, based upon the information that was available to him on the clerk's computer at the time. According to Yunker, when his conversation with the attorney occurred, the clerk's computer system would only display the most-recently filed extension notice for the property. When the attorney asked Yunker about the notices of extension, Yunker looked up the property on the computer and saw the second extension. Because the extension listed on the computer was a second extension, Yunker knew that something had come before that extension. Yunker went to the check the paper judgment book to see what was listed for the property, but the judgment book was not there. Yunker spoke to his immediate supervisor about the matter, and his supervisor told him that the judgment book was being scanned. Yunker's supervisor followed up thereafter.

¶ 29   According to Yunker, when a tax buyer brought in a notice of extension, three copies of the document were file stamped by the county clerk's office—one for the county clerk's office, one to send to the homeowner, and one to give back to the tax buyer. Although a blue time stamp was often used by the clerk's office as the original time stamp, if the tax buyer came in with several take notices or notices of extension, the clerk's office would time stamp a blank piece of paper and then run that time stamp through a copy machine so that the time stamp would be photocopied onto all of the documents. In those cases, the original time stamp on the documents would be a black and white photocopy. Eventually, the notices of extension and take notices would be destroyed pursuant to the clerk's policy and the only thing left in the clerk's office to show the extension would be the judgment book. Every time the clerk's office received notices of extension, they would hand write or make labels and put them in the paper judgment

14

book under the extensions section. The clerk's office did not do so anymore, however, because all of the paper judgment books had been phased out and had been replaced by digital versions.

¶ 30     In August 2020, a hearing was held in the trial court on the cross-motions for summary judgment. After listening to the oral arguments of the attorneys, the trial court took the case under advisement. Later that month, the trial court issued a written ruling granting respondents' motions for summary judgment on count I of BOA's second amended pleading and denying BOA's motion for the same relief. In making its decision, the trial court again treated BOA's count I as a section 2-1401 petition.

¶ 31     BOA appealed. While the appeal was pending, respondent, Caz REO, filed a motion to dismiss the appeal, claiming that appellate jurisdiction was lacking because count II of BOA's second amended pleading (the petition to have the trial court vacate its order directing the issuance of the tax deed pursuant to section 22-45 of the Code and section 2-1401 of the Code of Civil Procedure) was still pending before the trial court. We took the motion to be decided with the case.

¶ 32                                    II. ANALYSIS

¶ 33                                  A. Summary Judgment

¶ 34     On appeal, BOA argues that the trial court erred in granting summary judgment for respondents on count I of BOA's second amended pleading, which sought to have the tax deed declared void pursuant to section 22-85 of the Code, and in denying BOA's motion for summary judgment on that same count.[8] BOA asserts that summary judgment should not have been

---

[8] Initially, BOA also challenged in this appeal the trial court's denial of BOA's motion to dismiss the Uhers' second amended *bona fide* purchaser defense. In their response brief, however, respondents represented that the Uhers pled their *bona fide* purchaser defense only as to count II of BOA's second amended pleading. In its reply brief on appeal, BOA stated that it would stand on respondents' "admissions and waiver" in that regard. We, therefore, consider that portion of BOA's appeal to be

15

granted for respondents and should have been granted for BOA instead because there was no genuine issue of material fact and the pleadings and supporting documents showed that the tax deed was void since the holder of the tax sale certificate had failed to take out and record the tax deed within a year after the redemption period had expired as required by section 22-85 of the Code. In support of that assertion, BOA contends that: (1) the redemption period in this case expired on May 21, 2014, when the initial redemption period ended without being extended; (2) the alleged first extension presented by respondents should not have been considered by the trial court because the evidence showed that it was not contained in the county clerk's records and because respondents failed to present any admissible evidence to properly authenticate the alleged first extension; and (3) in the alternative, even if the alleged first extension was properly authenticated and should have been considered by the trial court, it was not sufficient to legally extend the initial redemption period because the alleged first extension was not signed by the holder of the tax sale certificate at the time (Bisbee) or by one who had authority to act on behalf of the holder. More specifically, as to its claims regarding respondents' supporting documents, BOA maintains that respondents' summary judgment affidavits were insufficient and failed to provide admissible evidence because the affidavits contained statements made without personal knowledge, hearsay information, and/or statement's that were later contradicted by the affiant's deposition testimony (Cohane). In addition, BOA notes that respondents failed to present any affidavit from James P. Meeks, the person who had supposedly signed the alleged first extension. As a final point, BOA also contends, although somewhat more implicitly on appeal, that its motion to void the tax deed pursuant to section 22-85 of the Code, as filed by BOA in count I of its second amended pleading, was a proper motion that may be filed by a party in a tax deed case and was not an improper collateral attack on the tax deed, as respondents suggest. For all of the

withdrawn by BOA.

16

reasons stated, BOA asks that we reverse the trial court's grant of summary judgment for respondents, that we grant summary judgment for BOA instead, and that we reverse the trial court's denial of BOA's motion to void the tax deed.

¶ 35    Respondents argue that the trial court's ruling was proper and should be upheld. Respondents assert that summary judgment was correctly granted in their favor because there was no genuine issue of material fact and the pleadings and supporting documents showed that: (1) the person who signed the first extension, Meeks, had the authority to do so on behalf of Bisbee, the owner of the tax sale certificate at the time; (2) the reference to Caz Creek in the signature block of the first extension was merely a typographical error and did not make the first extension invalid; (3) the first extension was timely filed with the county clerk's office before the initial redemption period had expired; (4) the second extension was timely filed with the county clerk's office before the redemption period, as extended by the first extension, had expired and has not been contested by BOA; (5) the tax deed that was subsequently obtained by Caz REO was taken out and recorded within a year after the redemption period, as extended by the first and second extensions, had expired; and (6) no violation of section 22-85 of the Code occurred. With regard to their supporting documents, respondents contend that their summary judgment affidavits were legally sufficient and provided admissible evidence. More specifically on that point, respondents maintain that Cohane's affidavit was sufficient to authenticate the first extension, clearly established that Meeks had authority to file the first extension on Bisbee's behalf, and was not contradicted by Cohane's later deposition testimony. Respondents maintain further that Dean's and Atlas's affidavits were proper as well for the purposes for which they were submitted and that any hearsay information contained in any of respondents' affidavits would merely be stricken and would not cause the entire affidavits to be excluded. In addition,

17

as an argument in the alternative, respondents assert that summary judgment was also proper to grant in their favor because a party may not collaterally attack a tax deed under section 22-85 of the Code, as BOA did in count I of its second amended pleading in this case. For all of the reasons set forth, respondents ask that we affirm the trial court's ruling.

¶ 36    The purpose of summary judgment is not to try a question of fact but to determine if one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions on file, and affidavits, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. See 735 ILCS 5/2-1005(c) (West 2018); *Adams*, 211 Ill. 2d at 43. Summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt. *Id.* In appeals from summary judgment rulings, the standard of review is *de novo*. *Id.* When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A trial court's grant of summary judgment may be affirmed on any basis supported by the record. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004).

¶ 37    Section 22-85 of the Code provides that unless the holder of the tax sale certificate takes out and records the tax deed within one year after the redemption period has expired, the certificate or deed, and the sale upon which it is based shall be absolutely void with no right to

18

reimbursement.  35 ILCS 200/22-85 (West 2010); *In re Application of Will County Collector (Sass)*, 2018 IL App (3d) 160659, ¶ 13.  The length of the redemption period is determined by statute, and, in situations such as the present case, where the subject property is improved with a single-family home at the time of the tax sale, the redemption period is set at two years and six months from the tax sale date.  See 35 ILCS 200/21-350(b) (West 2010); *Sass*, 2018 IL App (3d) 160659, ¶¶ 13-14.  The statutory redemption period, however, may be extended by the holder of the tax sale certificate.  See 35 ILCS 200/21-350(c), 21-385 (West 2010); *Sass*, 2018 IL App (3d) 160659, ¶ 13.  To do so, the holder must, before the current redemption period expires, file a written notice of extension with the county clerk's office describing the property, stating the date of the sale, and specifying the extended period of redemption.  See 35 ILCS 21-385 (West 2010); *Sass*, 2018 IL App (3d) 160659, ¶ 13; *In re County Treasurer (CCPI)*, 2012 IL App (1st) 101976, ¶ 33.  An extension notice need only substantially comply with section 21-385 to be valid.  *In re County Collector (Wolfe)*, 2014 IL App (2d) 140223, ¶ 20.

¶ 38       In the present case, after having reviewed the pleadings and supporting documents presented in the summary judgment proceeding, we find that the trial court properly granted summary judgment for respondents on count I of BOA's second amended pleading.  We reach that conclusion for three main reasons.  First, the pleadings and supporting documents showed that there was no genuine issue of material fact that remained for the trial court to decide.  Indeed, the parties in this case filed cross-motions for summary judgment in the trial court.  By doing so, the parties agreed that only a question of law was involved and invited the trial court to decide the issues based upon the record presented.  See *Sass*, 2018 IL App (3d) 160659, ¶ 12.  We concur with the parties' assessment in that regard.

¶ 39        Second, the pleadings and supporting documents in this case showed that the first extension had been properly authenticated and that it had been timely filed with the county clerk's office before the initial redemption period had expired.  Although the first extension could not be located in the county clerk's records, respondents were able to produce a file-stamped copy of the first extension in the summary proceeding and were also able to present a certified copy of the county clerk's judgment book, showing that both the first and second extensions had been listed for the property.  In addition, and absent from the proceeding on respondents' motions to dismiss, in the summary judgment proceeding, respondents presented Cohane's affidavit, which stated, among other things, that the copy of the first extension that had been presented was a true and accurate copy of the first extension as it existed in the company's records.  Furthermore, the other affidavits and deposition testimony presented in the summary judgment proceeding clearly resolved any potential discrepancies that may have existed with the first extension, such as why the first extension may have had a black-and-white file stamp, rather than the blue file stamp that was often associated with original documents from the county clerk's office; what routine procedure was for filing the extensions; and why Yunker (the county clerk employee) may have told BOA's attorney that only one extension notice had been filed for the property.  We, thus, conclude, as the trial court did, that the supporting documents established without contradiction in this case that the first extension was timely and properly filed with the county clerk's office.

¶ 40        Third and finally, the pleadings and supporting documents that were presented showed that Meeks had the authority to sign the first extension of behalf of Bisbee.  As Cohane's affidavit and deposition testimony abundantly established, Meeks was the president of MTAG Services, the company that acted as the servicer for all of the tax lien holders in this case.  In that

20

position, Meeks had the authority to take all of the administrative actions necessary to facilitate and complete the purchase of the properties at the tax sale, including signing the first extension that was contested in the present case.[9] Indeed, Cohane specifically stated as much in his affidavit and later confirmed that statement in his deposition. Although BOA claimed that portions of Cohane's affidavit were hearsay and were inconsistent with his later deposition testimony, those criticisms do not apply to the specific statements of Cohane at issue here.

¶ 41 Because Meeks had the authority to sign the first extension on behalf of Bisbee, the typographical error in the signature block under Meeks's name—wherein it was listed that Meeks was acting on behalf of Caz Creek, rather than Bisbee—did not render the first extension invalid. See *Wolfe*, 2014 IL App (2d) 140223, ¶ 20 (indicating that only substantial compliance with section 21-385 of the Code is required for an extension notice to be valid). BOA does not challenge the validity of the second extension. Thus, it is clear from the record in this case, that the redemption date was validly extended to November 18, 2014. The tax deed, which was recorded within a year of that date was not void, therefore, pursuant to the terms of section 22-85 of the Code. See 35 ILCS 200/22-85 (West 2010).

¶ 42 In reaching that conclusion, we note that the facts of this case are easily distinguishable from the facts of the *Sass* case, a case that is relied upon by BOA here. In *Sass*, as in the present case, one of the questions before the appellate court was whether the person or entity that had filed the redemption period extension notice, Sass in that case, was the holder of the tax sale certificate at the time. See *Sass*, 2018 IL App (3d) 160659, ¶ 16. After reviewing the pleadings and supporting documents presented in the summary judgment proceeding, this court found that

---

[9] Although a corporation must be represented by an attorney in a legal proceeding (*Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, ¶ 22), we know of no legal rule that would require an extension notice for a corporate tax sale certificate holder, such as the one in the present case, to be signed by an attorney.

Sass was not the certificate holder when the extension notices were filed. *Id.* In doing so, this court noted that Sass had not argued that it was the same entity as the original purchaser of the property at the tax sale, U.S. Bank, and had not produced any evidence to that effect. *Id.* Nor had Sass claimed that it was acting as U.S. Bank's agent when it filed the extension notices. *Id.* In addition, Sass had admitted in its amended answer that the tax sale certificate had never been assigned and, even though Sass alleged in its unverified petition for tax deed that it had purchased the subject property at the tax sale, it never presented any affidavits, testimony, or other documentary evidence rebutting Citimortgage's (the section 2-1401 petitioner) argument that U.S. Bank, and not Sass, was the purchaser and the holder of the tax sale certificate. *Id.* This court went on to find, therefore, that the extension notices did not extend the redemption period and that the tax deed was void without the right to reimbursement because it had not been taken out and recorded within a year after the redemption period had expired as required by section 22-85 of the Code. *Id.* ¶¶ 16-18. In the present case, unlike in *Sass*, and as noted above, the affidavit and deposition testimony of Cohane abundantly established that Meeks had the authority to sign the first extension notice on behalf of Bisbee, the certificate holder at the time. Indeed, as respondents correctly note, BOA presented no evidence to the contrary in the summary judgment proceeding.

¶ 43    Since we have determined that respondents were properly granted summary judgment on count I of BOA's second amended pleading, we need not address respondents' argument in the alternative—that summary judgment was proper for respondents because count I was an impermissible collateral attack on the tax deed.

¶ 44                                    B. Motion to Dismiss Appeal

22

¶ 45       As noted above, while the appeal in this case was pending, respondent, Caz REO, filed a motion to dismiss the appeal, claiming that appellate jurisdiction was lacking because count II of BOA's second amended pleading was still pending before the trial court. The parties have now informed us that the proceedings on count II have been completed in the trial court and that a separate appeal is now pending before this court on count II. We, thus, find that Caz REO's motion to dismiss this appeal is now moot and, therefore, deny the motion.

¶ 46                                 III. CONCLUSION

¶ 47       For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 48       Affirmed.